HARLAN P. HALL *vs.* COUNTY OF RAMSEY.

December 15, 1882.

**Publication of Delinquent Tax List—Designation of Paper—Invalid Contract for Printing.**—Gen. St. 1878, c. 11, §§ 72, 110, construed, and *held* that there can be no valid letting by the board of county commissioners of the advertising of the list of the delinquent taxes on real estate, without a designation of the newspaper in which such list shall be published. Also, that, under section 72, the board must designate such paper, either at their annual meeting in January, or at their meeting in March; and if they fail to do so, their power to act is terminated, and thereafter the power and duty to designate such newspaper is devolved exclusively upon the county auditor.

Plaintiff appeals from an order of the district court for Ramsey county, *Brill,* J., presiding, sustaining a demurrer to the complaint.

The complaint alleges that plaintiff is the publisher of a daily newspaper in Ramsey county, known as "The Daily Globe," and had entered into a contract with defendant for the publication of the delinquent tax list for that county, but that defendant has refused to give him the list for publication, or to allow him to publish it, and asks damages accordingly. The complaint sets out in detail, as recited in the opinion, the proceedings by which the alleged contract was entered into.

*H. J. Horn,* for appellant.

It is claimed that the action of the board of county commissioners, at their meeting in March, 1881, did not designate the paper in which the list was to be published, as required by Gen. St. 1878, c. 11, § 72. *Eastman* v. *Linn,* 26 Minn. 215, cited by counsel, is not in point. It only goes to the regularity of the tax judgment, and does

not affect the contract which the county is authorized to make under another provision. Gen. St. 1878, *c.* 11, § 110. *Griggs* v. *City of St. Paul*, 11 Minn. 214, (308.)

The letting of the contract should precede and not follow the designation of the paper, for if the board should first designate the paper, the object of the provision requiring the printing to be let to the lowest bidder would be frustrated. The plaintiff had nothing to do with the designation of the paper, and no control over that matter.

As to the time of letting the contract, the statute is merely directory. If the contract is let in time for the publication of the list, it is sufficient. The general rule is, "that when a statute directs a court or officer to perform a duty or execute a power at or within a specified time, without negative words restraining the doing it afterwards, the naming of the time will be considered as directory, and not as a limitation of authority." Blackwell on Tax Titles, 187; *Holland* v. *Osgood*, 8 Vt. 276; *People* v. *Allen*, 6 Wend. 486; *Spradling* v. *State*, 17 Ala. 440; *State* v. *Harris*, 17 Ohio St. 608; *Jackson* v. *Young*, 5 Cow. 269; *St. Louis County Court* v. *Sparks*, 10 Mo. 117; Sedgwick on Const. Law, 316.

The proviso in section 72 "that if the county commissioners shall fail to designate such paper, then it shall be designated by the county auditor," does not in express terms limit this power in the board. It provides generally for a failure of the commissioners to designate a paper—not the failure to designate it by any particular time.

*J. J. Egan,* for respondent.

MITCHELL, J.[*] This was an action for damages for the breach of an alleged contract between the parties for the publication, by plaintiff, of the list of delinquent taxes upon real estate for the year 1880. The important question here is whether the complaint states a cause of action. Gen. St. 1878, *c.* 11, § 72, provides that the newspaper in which this list shall be published "shall be designated by resolution of the board of county commissioners of the county in which the taxes are levied, at their annual meeting in January, or at the meeting of said board in March, a copy of which resolution, certified by

[*]Gilfillan, C. J., because of illness, took no part in this case.

the county auditor, shall be filed in the office of the clerk of the court: *provided*, that if the county commissioners shall fail to designate such paper, then it shall be designated by the county auditor." Section 110 of the same chapter provides "that the county commissioners shall let the advertising of the delinquent tax list to the publisher or proprietor of a newspaper who will offer to do the same in some daily or weekly newspaper, having not less than four pages of five columns to the page, * * * for the lowest sum, not to exceed 12 cents for each description."

In view of the provisions of these two sections, we think it clear that the board of county commissioners are not authorized to make a contract with any one for the publication of the delinquent tax list, without designating the newspaper in which it is to be made. In other words, that without such designation there can be, under the statute, no valid letting. Under section 72 there can be no legal publication of the list until the newspaper in which it is to be made has been first designated. *Eastman* v. *Linn*, 26 Minn. 215. Under section 110, the board are to let the advertising, not to the publisher or proprietor who will offer to do it for the lowest sum, but to the publisher or proprietor *who will offer to do it in some daily or weekly newspaper* of the kind therein described, for the lowest sum. This clearly means that the offer of the publisher or proprietor must designate the newspaper in which he proposes to publish the list, and that the resolution of the board accepting the offer, or letting the advertising, must also designate, either in terms or by reference to the offer accepted, the newspaper in which the publication is to be made. Any other contract, or any attempt to contract in any other way, would be clearly unauthorized by statute. Taking the two sections together, we think it manifest that the designation of the paper is not only an essential prerequisite to a legal publication, but also an essential part of the contract of letting the advertising; that without it there can be no valid operative contract. We do not mean to be understood that the designation required by section 72 must necessarily be a resolution separate and distinct from the resolution accepting a bid and letting the advertising to the bidder. If the latter designates the newspaper in which the publication is to be made, we

see no reason why this would not be a sufficient compliance in that respect with the provisions of section 72. But the designation of the newspaper must be made, else there is no contract authorized by the statute.

This construction is corroborated by reference to the history of this statute. Under the law of 1874, (Laws 1874, *c.* 1, § 112,) the county auditor was required to cause the delinquent tax list to be published in some newspaper of a kind therein described. The newspaper in which this was to be done was to be designated by resolution of the board of county commissioners. Under this act it is clear that the auditor had no power to cause the publication of the delinquent tax list in any paper not designated by the county board, nor until the board had designated one. Had he caused the list to be published in a newspaper not thus designated, his act would have been without authority of law, and the county would not have been liable to pay for the publication. The law of 1874 had no provisions corresponding to those of section 110 of the act of 1878, and hence did not require the advertising to be let to the lowest bidder. The act of 1878, while retaining section 112 of the act of 1874, (with certain amendments, not here material, the same being Gen. St. 1878, *c.* 11, § 72,) added section 110, introducing the feature of letting to the lowest bidder. Now, there is nothing in the act of 1878 indicating that the designation of the newspaper was any less essential to a valid contract for the publication of the list than it was under the act of 1874. The act of 1878 simply superadds the further requirement of letting the advertising to the lowest bidder; and as the newspaper could not be designated until it was ascertained who the lowest bidder was, we think it was the clear intention of the statute that the letting and designation of the paper should concur, and be in effect one act. In no other way that suggests itself to us can the provisions of both sections be carried out or complied with. It is, of course, elementary that public officers whose authority is wholly statutory must exercise that authority in conformity to the statute, and that all persons dealing with them are bound to take notice of the nature and extent of their authority.

Moreover, we think that the provisions of section 72 as to the time

within which the board of county commissioners are to designate the newspaper in which the tax list is to be published are not merely directory, but mandatory.  Hence, if they fail to act in the matter at or before their March meeting, their power to do so is terminated, and thereafter the right and duty to act in the matter is devolved exclusively on the county auditor.  If this were not so, and if either or both might thereafter designate the paper, it might lead either to a conflict between the two, or result in each depending upon the other and neither acting, whereas the policy of the law is to fix definitely the powers and duties of each, so that there may, if possible, be no failure to have this public duty performed.  Therefore, in considering the complaint in this action, we need only consider what was done by the county board at or before their March meeting.

This is all set out in the complaint in full, as follows:  At a meeting of the board, held on the first of March, the plaintiff made and presented to them in writing the following offer:.

"OFFICE OF THE DAILY GLOBE, March 1, 1881.

*"To the Honorable Board of County Commissioners of Ramsey County*—GENTLEMEN: I herewith propose to publish the delinquent tax list or tax lists, required by law to be published during the current year, for eleven and one-half cents (11½) per description.

[Signed]                              "H. P. HALL,

"Publisher Saint Paul Globe."

On receipt of this offer, the board, on the same day, took the following action:  "March 1, 1881, referred to the committee on printing, with power to act."  The committee on printing, having met and considered the same, on the same day made the following decision and report, which they filed with the county auditor, indorsed upon the bid of plaintiff:

"March 1, 1881.  The committee on printing hereby accept the within bid of H. P. Hall, of the daily Globe, for printing the tax list of 1880, at the price therein named.

[Signed]                   "J. F. McINTOSH,

"JOHN WAGNER,

"JOHN GRACE,

"Committee on Printing."

Waiving the question whether a meeting held on the first day of March was one at which the county board could act in this matter, and the further question whether they could thus delegate their authority to a committee, it must be evident that, under the construction which we have placed upon the statute, this does not amount to a valid letting of the advertising of the tax list, for the reason that there is nowhere any designation of the paper in which the list is to be published. The plaintiff, in his proposition, does not offer to publish it in any particular paper. The heading of his communication merely indicates the place where it was written. True, he signs himself "publisher of the St. Paul Globe," but this is merely descriptive of the person. In short, there is nothing whatever in this offer that implies any obligation to publish the list in the St. Paul Globe in case his offer is accepted. *Eastman* v. *Linn, supra.* The report of the committee describes the plaintiff as "of the St. Paul Globe," but this is also merely descriptive of the person. We will search in in vain for anything in the offer or in the acceptance of it that amounts either to a proposition to publish the list in the St. Paul Globe, or to a designation of that paper as the one in which the publication was to be made. Had this offer as accepted been acted on, a publication in any other paper would have fully fulfilled its terms. Hence the allegations elsewhere contained in the complaint, that the Globe was a paper of the kind in which the publication could lawfully be made, are wholly immaterial, because there was no offer to publish in that paper, nor was it ever designated by the board as the one in which the publication should be made.

Order affirmed.