STATE, EX REL. GEORGE W. POST, V. THOMAS H. BEN-
TON ET AL.

[FILED DECEMBER 23, 1890.]

Bank Examiners: COMPENSATION. Under the act of March 29,
1889, requiring banks, corporations, firms, and individuals trans-
acting a banking business to report their resources and liabili-
ties to the auditor of public accounts, and providing for their
yearly examination, the fees of bank examiners, appointed by
the board of state officers under the act, are to be strictly in
conformity to section 8 of the act, and any resolution or order
of the board of state officers prescribing any other rule or rate
of compensation is without authority and void.

ORIGINAL application for *mandamus*.

*E. A. Gilbert*, for relator.

*William Leese, Attorney General, contra.*

No briefs filed.

COBB, CH. J.

The relator presented his information December 4, 1889,
applying for a peremptory writ of *mandamus* to compel
the auditor of public accounts, the treasurer of state, and
the attorney general, as a board of bank supervisors, for the
appointment of bank examiners under an act of the legis-
ture of the state entitled "An act to require corporations,
firms, and individuals transacting a banking business to
make reports of their resources and liabilities to the aud-
itor of public accounts, and to provide for the examination
of the affairs of such banking institutions, and to fix a
minimum capital for the transaction of a banking business,
punish the receiving of deposits by insolvent banking in-
stitutions, and to provide for winding up their affairs, and
to repeal sections one, two, and three of chapter eight of

the Compiled Statutes of 1887," approved March 29, 1889, to revise and rescind the rate of compensation to be paid for the service of bank examiners.

The relator sets up that he is a stockholder in the Tamora State Bank, and of other banks organized under the laws of this state at various places.

II. That the legislature of this state at its twenty-first session passed the act referred to.

III. That by its provisions the auditor, treasurer, and attorney general are constituted a *quasi* board to appoint the bank examiners therein provided, to exercise a general oversight of the operations of the act, and the examination of the banks of the state.

IV. That said board met and organized on July 1, 1889, and appointed A. P. Brink, J. C. McNaughton, and Thomas E. Sanders bank examiners, who qualified and entered upon their duties.

V. That section 8 of the act provides that "every person appointed to examine the affairs of any bank, corporation, firm, or individual transacting a banking business shall receive compensation for such examination at the rate of $10 for each day by him employed in such examination, which shall be paid by the bank, corporation, firm, or individual whose affairs are examined; *Provided*, that the fees paid by any such corporation, firm, or individual for any such single examination shall not be less than $10 nor more than $20."

VI. That said board, on July 1, 1889, made an order authorizing and requiring said bank examiners to charge $20 each in all cases as the fees of examiners without reference to the time employed, which order was without authority of law, and said board is not vested with judicial discretion to fix the amount to be charged for such examinations, which is fixed by the act, and said examiners refuse to examine banks unless they are to be paid the sum of $20 regardless of the time spent in making the same.

VII. That on October 31, 1889, the defendant, T. E. Sanders, one of the examiners, examined the Tamora State Bank, spending only the fraction of one day, and also examined the other bank in the village of Tamora on the same day, and required each to pay therefor the fee of $20, which sum was so paid.

The relator prays that a peremptory writ of *mandamus* may issue to said state officers, acting as such board, commanding them to rescind said order authorizing the charge of $20, and that said examiners be required to perform the duty of bank examination in the manner specially provided by law, and for the fees provided in the 8th section of the act.

The respondents answered, admitting the allegations of paragraphs two, three, four, and five of the relator's information.

II. In answer to paragraph VI, they set up that under the provisions of the banking act of March 29, 1889, the examiners are allowed $10 for each day employed in any examination, to be paid by the bank, and at no time has either of them ever received any compensation in excess of $10 for each day employed.

III. They further say that section 8 of said act provides that the fees paid by any bank for any single examination shall not be less than $10 nor more than $20, and that no bank is required to pay for more than one examination in any one year; that in pursuance of said provision the three respondents first mentioned made the order charging each bank examined the sum of $20 as a fee only after a full investigation of the time actually employed in examining the affairs of any bank, and upon finding that more time than one day was actually required in completing an examination, that the sum so charged is reasonable and just, and that if the time actually spent in a bank building was only charged for, many banks that require three days' time to examine their affairs would only be required to pay the sum of $10.

The affidavits of Examiners Sanders, McNaughton, and Brink are hereto attached, marked A, B, and C, and made a part of respondents' answer.

Respondents deny that the examiners, or either of them, ever refused to examine a bank unless a fee of $20 was paid, but alleged the fact that no bank has refused to pay that fee, and that in every instance an examination of the bank's books is first made before any fee is asked or compensation received.

IV. Respondents in answer to paragraph VII allege that on October 31, 1889, Sanders, the examiner, did examine the Tamora State Bank; leaving Utica he reached Tamora about 11 o'clock A. M., and immediately after dinner commenced his examination and continued it until 6 o'clock P. M., discovering irregularities which required additional time for examination: I. The articles of incorporation were not signed. II. The records were not signed. III. The book of certificates showed that all of the certificates of stock were issued to J. T. Jones, the cashier. IV. That the name of the relator did not appear on said book as a stockholder. V. It was found to be necessary to open a correspondence with the bank's correspondents in order to verify the statement as shown by the books of the bank. VI. And further, that the names of the shareholders should be made to appear on the bank books, or, the individual liabilities should be made to appear, showing that the bank had property of the cash value as required by law above incumbrances and in excess of liabilities; that after making the examination, it occupied the examiner more than one-half the day's time to verify the accounts on the bank's books, to make out and send to the auditor of public accounts a report of said bank; that he did, on the evening of October 31, examine the bank of A. J. Williams & Co., from 6:30 P. M. until after 10 P. M.; that during A. M. of November 1, the examination was continued and it was found necessary to visit its correspondent at Seward to verify its statement.

V. The time actually employed in completing the examination of the Tamora State Bank was more than one and one-half days, and is yet incomplete, and will probably necessitate another visit to the bank.

VI. The time actually employed in completing the examination of A. J. Williams & Co.'s bank was more than two days, and each paid the examiner $20.

VII. Respondents further say that an examination cannot be properly made and completed of any bank in this state in less than two days, and they deny each and every other allegation in the relator's information contained.

No brief is filed in the case by the relator, nor is there any evidence submitted in support of the information. From this fact, we are not informed upon what principle the court is asked to enforce, by *mandamus*, the duty of the board of state officers to rescind the resolution and order relating to the fees of bank examiners.

In High's work on Extraordinary Legal Remedies, sec. 32, the author says, "it is to be premised that the jurisdiction by *mandamus* over the official acts of public officers is exercised for the purpose of stimulating rather than restraining their action. And while officers who are backward or dilatory in the exercise of their functions may properly be set in motion by *mandamus*, yet when they are proceeding to discharge a duty imposed upon them by law, they are no longer subject to the control of the writ."

While I find no authority under the act of March 29, 1889, creating the board of state officers known as the "banking board," to formulate by resolution or order, rules for the regulation of bank examiners providing for the examination of the affairs of banks, corporations, firms, and individuals transacting a banking business, I am equally at a loss to find any authority or rule compelling them to expunge and rescind their resolution and order, in case they have so established them, and even though it be conceded that such rules are without the authority of law.

An additional rule laid down by the author cited is that the " relator on whose application the relief is sought should show some personal interest in that which he seeks to enforce, and that *mandamus* will not lie to compel action upon the part of public officers, where it is apparent that the relator has no direct interest in the action sought to be coerced, and that no benefit can accrue to him from its performance."

To authorize relief in this case, it must clearly appear that there is a specific ministerial duty on the part of the respondents to be performed in which the relator is directly interested.

The relator alleges that he is a stockholder in the Tamora State Bank, at Tamora, and in other banks organized under the laws of this state at various places, and that said board, on July 1, 1889, being in session to consider the enforcement of the act of March 29, 1889, passed a resolution and entered an order requiring the bank examiners to charge $20 each, in all cases, as the fees for examinations, without reference to the time employed or to the provisions and restrictions of the eighth section of the act, and alleges further, that on October 31, 1889, the defendant Sanders, in pursuance of such order, visited Tamora, and examined the Tamora bank, spending only the fraction of one day, and, at the same time, examined the banking business of A. J. Williams & Co. on the same day, requiring each to pay the fee of $20 for his services, whereas he was entitled under the law to but $10 for each examination.

The respondents admit the second, third, fourth, and fifth paragraphs of the information, traverse all others, and deny circumstantially the allegation as to the time spent in examination at Tamora, alleging that in the first instance it was one and a half days, and in the second two.

Whatever the information shows, or tends to show, it

certainly fails to show that the relator has any direct legal interest in the ministerial act or obligation which he seeks to enforce on the part of the respondents.

When this application was submitted, it was the informal request of counsel, on either side, that whatever might be the result as to the writ of *mandamus*, the court should express an opinion as to the authority of the bank examiners under the resolution of the board of state officers created by the act of March 29, 1889, to exact and receive of each bank, corporation, firm, or individual transacting a banking business, for the examination provided by section 8, the sum of $20.

At the hearing, we were all of the opinion that the language of the section referred to, "that every person appointed to examine the affairs of any bank, corporation, firm, or individual transacting a banking business shall receive compensation for such examination at the rate of ten dollars for each day by him employed in such examination," was clear and specific, and free from ambiguity; and, together with the proviso, "that the fees paid by any such corporation, firm, or individual for any such single examination shall not be less than ten dollars, nor more than twenty dollars," left no room to doubt that it was the legislative intention that the examiners should discharge their duties, and work their functions, by the day, at the rate of ten dollars per day; and if their duties employed them in the examination of any one bank less than one day, "that the fees paid for such single examination should not be less than $10," and that any additional time employed, beyond one day, should be paid for at the same rate, but not to exceed one additional day, or $20. The reason of the law seems to be clear. This compensation is paid by the banking concerns examined. That banker whose books, accounts, and financial affairs are properly kept could scarcely be subjected to more than one day's charges by the examiner, while one whose affairs could not

be readily understood, from unintelligible books and accounts might be the subject of two days' examination and double fees. This rule is therefore reasonable, and tends to encourage careful methods in the important transactions of banks.

It was, doubtless, expected by the framers of the act that the compensation to the examiner or examiners, provided under the rule stated, would exceed the sum of $2,000 to each, over traveling expenses; hence the second proviso to the section, that all fees collected by any such examiner in excess of $2,000, and all necessary traveling expenses, should be paid into the state treasury.

It is clear from the whole act that no authority is vested in the board of state officers, or in the examiners themselves, to change the rule or the rate of compensation to examiners, for any cause or reason whatever, whether the expectations of the legislature be realized or not. The writ will be

DENIED.

THE other judges concur.