ENDION IMPROVEMENT COMPANY, Respondent, vs. EVENING TELEGRAM COMPANY, imp., Appellant.

SAME, Respondent, vs. CITIZEN PUBLISHING COMPANY, imp., Appellant.

*October 20 — November 7, 1899.*

*Elections: Publication of notices: Compensation: County clerk: Authority to make contract: County board: Compromise of claim: Notice of statutory requirements.*

1. Sec. 21, Stats. 1898 (which changed the law relating to the publication of general election notices by county clerks), controlled the publication of such notices only as were transmitted to the clerks after said statutes went into effect, September 1, 1898, even though the election was to be held after that date.

2. Sec. 21, Stats. 1898, requires the county clerk to publish as therein specified so much of the general election notice received by him from the secretary of state as relates to the questions and officers to be voted for in his county. Sec. 58 provides that when a proposed constitutional amendment or other question is to be submitted to the people, the secretary of state shall, not less than fifteen days before the election, certify the same to each county clerk, and the same shall be included in the publication of nominations for office provided for in sec. 36. *Held*, that the specific provision of sec. 58 governs and controls, the more general provision of sec. 21, and should have been followed in the publication of notice of the submission of a proposed revision of the banking law, although a copy of such proposed revision was transmitted to the county clerk with the general election notice.

3. Sec. 9, ch. 288, Laws of 1893, required the secretary of state to publish the general election notice in a newspaper at the seat of government once a week from the date thereof until the election. Sec. 10 required the county clerk to cause the substance of such notice "to be published in at least one newspaper in the county," but made no mention of the number of insertions, the former express provision for a weekly publication (sec. 18, R. S. 1878) having been superseded upon the adoption of the Australian ballot system. *Held*, that but one insertion of the notice required by sec. 10 was authorized.

4. A county clerk has no authority to cause or contract for any publication of election notices except such as the law prescribes, and

persons with whom he contracts for such publication are bound to take notice of said limitation.

5. The fees for each publication of election notices being prescribed by law, the county board of supervisors has no power to compromise a claim for such publication, or to allow any sum in excess of the amount legally due.

6. Where a daily newspaper accepts for publication the information to voters it is chargeable with notice that a daily publication is required by sec. 36, Stats. 1898, in counties wherein such a newspaper is published, and if it fails to comply therewith it is not entitled to any compensation.

APPEALS from orders of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

The plaintiff brings these actions on behalf of itself and other taxpayers against Douglas county, its clerk and treasurer, and the other defendants, to restrain the issue and payment of certain county orders mentioned in the pleadings. It is alleged in the first of said cases, in substance, that the secretary of state, in accordance with sec. 9, ch. 288, Laws of 1893, transmitted to the county clerk a notice in writing specifying the officers to be voted for at the ensuing November election; that the clerk caused a proper notice to be published in the Evening Telegram, which is a daily newspaper, as required by sec. 10 of said law; that said notice contained seven folios, and the legal fees for publication were $4.20; that said notice was published according to law on August 13, 1898; that on November 11, 1898, said company filed a bill with the county clerk for publishing said notice, thirteen publications, 200 folios, $960; that said company falsely and fraudulently pretended and claimed that said notice contained 200 folios and that the legal fees for publishing the same were $960; that the same was presented to the county board, and allowed at $636.35, and the clerk was directed to issue an order therefor. Then followed proper allegations that the clerk threatens to issue, and the treasurer to pay, said order. For a

second cause of action it is alleged that the county clerk prepared and caused to be delivered to the defendant newspaper an election notice and information to voters, as directed by secs. 36, 37, Stats. 1898; that said newspaper published said notice on October 31 and November 7, 1898, and no more; that a claim for $240 therefor was presented to the county board and allowed, and an order was issued and delivered to said defendant; that said claim was fraudulent, because said newspaper did not publish said notice daily, as provided by law; and that the treasurer threatened to pay said order.   In the second case the defendant the *Citizen Publishing Company* was the proprietor of a weekly newspaper, and printed the notice mentioned in the first cause of action above, and presented a claim the same as in the other case, and upon which the action of the county was the same. The relief demanded in both cases was that the claims be declared void, and the county officers be restrained from issuing or paying said orders.

The answer of the *Telegram Company* admits the publication of the notice mentioned in the first cause of action, and the presentation and allowance of the claim as stated, denies fraud, and alleges that the notice contained 200 folios.   It further alleges that it entered into a contract with the county to publish a notice of the general election, setting out the contents of the notice at length, and also expressly contracted to, and did, publish ch. 303, Laws of 1897, entitled " An act to revise the laws authorizing the business of banking; " that said notice and banking law were published thirteen weeks, and contained 200 folios.   It further sets out a presentation of its claim for the amount specified, and an allowance and compromise of the same by the county board, with defendant's consent, at the sum mentioned.   A general denial was entered to the second cause of action, after an admission of the publication of the notice. The answer in the second case sets out substantially the same defense as in the other case.

An order to show cause why a preliminary injunction should not issue was obtained, and upon the hearing such an injunction was issued, from which orders the defendants have appealed.

· For the appellant *Evening Telegram Company* there was a brief by *Solon L. Perrin;* for the appellant *Citizen Publishing Company* there was a brief by *W. M. Steele;* and the cause was argued orally by *Mr. Perrin.*

For the respondent there was a brief by *Crownhart & Foley,* and oral argument by *C. H. Crownhart* and *W. R. Foley.*

BARDEEN, J. It appears from the record that some time in August, 1898, the secretary of state transmitted to the county clerk of Douglas county the election notice as required by sec. 9, ch. 288, Laws of 1893. With that notice he also transmitted a copy of the revised banking. law, known as ch. 303, Laws of 1897, which by its terms was to be submitted to the electors of the state for approval or disapproval at the November election for that year. Thereupon the county clerk made out the usual election notice, and attached thereto a copy of the banking law, and directed the defendant newspapers to publish the same weekly until election day. This was done by both of the defendant newspapers, the first publication having been made early in August. It was for the publication of this notice and of the banking law, at legal rates, that the defendants presented bills which were allowed by the county board as stated. When the bills were presented, some question seems to have been raised as to their validity. The bills were referred to a committee, and the advice of the district attorney was taken. The claims were finally reduced from $960 to $636.35. The plaintiff insisted that the proper election notice, and the only notice the defendants had any right to publish, and the only one the county clerk had any right to contract

with them to publish, contained but seven folios, and that there was no authority of law for publication of the notice more than once. When the notices were transmitted to and received by the county clerk, and when he attempted to make the contract set up in the answer, the law in force was sec. 10, ch. 288, Laws of 1893, and provided that, after the clerk had received such notice from the secretary of state, he should "forthwith cause a notice containing the substance of the notice so received by him, together with a statement of the several county officers that are to be elected, to be published in at least one newspaper in the county." The Wisconsin Statutes of 1898 were to go into effect on September 1st of that year. Sec. 10 had been carried forward into the revision as sec. 21, and had been amended by adding after the words "received by him," above quoted, the words "as relates to the questions and officers to be voted for in his county." This law was supposed to have a sort of retroactive effect. So the county clerk not only gave to the newspapers the usual election notice, but also the entire banking law, as a question to be voted upon, and directed the publication of both until the day of election. In this he acted entirely without authority. Sec. 9, ch. 288, required the secretary of state to transmit the election notice to the county clerk "between the first day of July and the first day of September" in each year in which state officers were to be elected. Thus, the law required such certification to be made before the Statutes of 1898 went into effect. At the time the notice was received by the clerk, he was only required to print the substance of the notice received by him as to the election of officers. Sec. 21 of the Statutes of 1898 had no controlling force, and could only apply to such notices and questions as were transmitted to the clerk after they went into effect. If this were not so, the fact that there were specific provisions of the statute as to the manner in which constitutional

amendments or other questions were to be published and gotten before the electors must control the action of the county clerk in that regard. Sec. 50, ch. 288, Laws of 1893, amended and carried into the Statutes of 1898 as sec. 58, provided that, whenever such matters were to be submitted to the people of the state, the secretary of state, not less than fifteen days before election, should certify the same to the clerk of each county, who was to include the same in the publication of the notice of nominations for office prescribed by sec. 36. This publication was required to be at least seven days before election in two newspapers, and, in counties having no daily newspapers, in two additional papers. In counties where daily newspapers are published, such publication shall be daily, and one of such publications shall be upon the last day such paper shall be issued before election. It is a familiar principle that specific provisions of statute in regard to a matter shall govern and control more general provisions, so that, if it were admitted that sec. 21 had reference to the matter in hand, the specific provisions of secs. 58 and 36 must control. Our conclusion is, therefore, that the action of the clerk in causing the publication of the banking law as he did was absolutely without authority of law, and not binding upon the county.

Another question is presented: Was publication of the election notice more than once authorized by law? The statute says such notice shall be "published in at least one newspaper published in the county." The clerk and the publishers supposed that because sec. 9 required the secretary of state to "publish a copy of such notice in a newspaper printed at the seat of government, once in each week from the date of such notice until the election to which it refers," the notice provided for in sec. 10 should be published the same length of time. Any such supposition was wholly without legal foundation. The statute makes no such requirement, and a reference to other statutory provisions

shows that no such supposition can be considered reasonable. Prior to the adoption of the Australian ballot system, the statute contained an express requirement that such notice should be published once a week from the date of the notice until the election to which it refers. Sec. 18, R. S. 1878. As soon as the new plan was adopted this provision was dropped out of the law, and other suitable and proper statutes were passed on that subject, as is shown by secs. 26, 27, ch. 288, Laws of 1893. The propriety and necessity of any such publication were thereby done away with. The publication of the notice required by sec. 10 was simply to set the machinery of election in motion, and the other provisions noted brought the information home to the voter in such a way as to render a continuance of the first notice entirely unnecessary.

But it is said the county clerk made a *contract* with the publishers to publish the notice as they did, and therefore the county is bound. The clerk is a mere servant of the county. He has no power to bind the county, except in cases of express grant of authority, or where it may be fairly implied from the nature of the act authorized. The world at large is chargeable with notice of his legal restrictions. As stated in *Fernandez v. Winnebago Co.* 53 Wis. 247, "The liability of the county for such claim must rest upon strict legal right, and may not be enlarged by usage or other implication, or by argument of convenience." The clerk had no right to make any such contract, and no duty rested upon him to act as he did. He was not exercising any legal discretion. He stood as the mere agent of the county, with no power or authority to cause or contract for any publication except such as the law prescribed. His acts in this regard were clearly in excess of his authority, of which the defendants were bound to take notice.

Again, it is urged that the matter was compromised. The statute prescribed certain fees for each publication made according to law. The right of the publisher to compensation

for his work does not rest upon contract, but results by operation of law. He is entitled to the fees so prescribed and no more. His right thereto cannot be increased or diminished by contract. Such is substantially the holding in *Hoffman v. Chippewa Co.* 77 Wis. 214. In that case the publisher contracted with the county clerk to publish the list of unredeemed lands for three cents per description. The law prescribed a fee of thirty cents. The list was duly published, and the plaintiff then presented his bill for the fees according to the legal rate. The answer set up the contract, but the court held that, the statute having fixed the rate of compensation, it could not be diminished by any arrangement or contract the county clerk might make in respect thereto. So in these cases the rate of compensation for the services rendered is fixed by statute. Upon that basis the defendants are entitled to be paid. There can be no compromise, because there is nothing to compromise. The county board had no right or power to squander or give away the money of the county. *Washburn Co. v. Thompson*, 99 Wis. 585; *Land, L. & L. Co. v. McIntyre*, 100 Wis. 245. In their administrative capacity, the members of the county board act and exercise their power as public or special agents, and they cannot exceed the power conferred upon them by law. They cannot bind the county by allowing and ordering a claim to be paid not legally chargeable to it. They have not unlimited choice as to the objects to which the money of the public shall be applied. *Board of Commissioners of Huntington Co. v. Heaston*, 144 Ind. 583. They are as strictly bound by the law as are the other defendants, and bound to take notice of it and act within its provisions. Hence it follows that the pretended claim of compromise has no foundation to rest upon. Any allowance of the publishers' claims beyond the limits hereinbefore named was wholly unauthorized and illegal, and their payment was properly restrained.

The allowance in the first case of the claim of $240 for publishing information to voters was also illegal. The Evening Telegram was a daily paper. Sec. 36, Stats. 1898, required the clerk to make such publication daily in counties where daily newspapers were published. The Telegram Company received the notice, and was chargeable with knowledge of the law. The clerk had no discretion in the matter. The company having accepted the notice for publication, it then became its duty to publish it daily until election. Sec. 37 fixes the compensation for such publication in weekly newspapers at $120, and in dailies at $240. Instead of publishing the notice daily, the defendant made but two publications,— October 31st and November 7th. There having been no compliance with legal requirements, the defendant was clearly not entitled to compensation.

*By the Court.*— The orders appealed from in both cases are affirmed.