GEORGE A. MILES, APPELLEE, v. HOLT COUNTY, APPELLANT.

FILED MARCH 10, 1910.    No. 15,876.

1. **Taxation: PUBLICATION OF NOTICE: COMPENSATION.** A county board,
   under the provisions of section 7, ch. 75, laws 1903 (Ann. St.
   1903, sec. 10650) known as the "Scavenger act", designated a
   newspaper in which the necessary notices should be published.
   The county treasurer, assuming that the designation was not
   adequate, delivered the notice for publication to the plaintiff,
   who was the owner and publisher of another newspaper, and
   who knew of the former designation. The notices were published
   in plaintiff's newspaper. Under the proceedings the county col-
   lected a large amount of taxes from delinquent taxpayers, and
   a sum of money as costs in excess of plaintiff's claim. Plain-
   tiff filed his claim for the statutory fee for publishing legal
   notices, which was disallowed by the county board. *Held*, That
   having accepted the services without protest, and having re-
   ceived enough money from taxpayers to pay for the publication,
   defendant must pay the reasonable value of the services.

2. ————: ————: ————. In such a case the principle applied is
   that of reimbursement, and the plaintiff can only recover the
   actual cost of the services rendered and material furnished
   without the allowance of profits, and not exceeding the legal
   rate. *Clark v. Lancaster County*, 69 Neb. 717.

APPEAL from the district court for Holt county: WIL-LIAM H. WESTOVER, JUDGE. *Reversed.*

*E. H. Whelan* and *R. R. Dickson,* for appellant.

*J. A. Donohoe* and *M. F. Harrington, contra.*

LETTON, J.

In January, 1905, the county board of Holt county took action under the provisions of chapter 75, laws 1903 (Ann. St. 1903, secs. 10644-10691) commonly known as the "Scavenger act", to enforce the collection of delinquent taxes against real estate in that county. The act provides for the publication of a notice of the filing of the petition in the statutory action in the district court, and for a description of the lands or lots affected to be published as a part of the notice. The act also provides (section 10650): "The county commissioners of each county shall designate the newspaper in which said notice, and in which all notices of tax sales made by the county treasurer hereinafter provided for, shall be published, provided, the county treasurer shall designate such newspaper where the county commissioners fail to do so." The county treasurer, pursuant to the direction of the county board, prepared the petition required by the statute and the notice of the filing thereof. On the 21st of April, 1905, the county board designated the newspaper in which the notice should be published, the record showing: "On motion the printing of the scavenger delinquent tax list was awarded to the O'Neill Frontier." The county treasurer, assuming that the county board did not "designate the newspaper", as the statute required, on the 2d day of July, 1905, designated the Holt County Independent as the newspaper in which the notice should be published, and gave the copy for the notice to the plaintiff, who is publisher of that paper, for the purpose of publication. The notice was so lengthy

and contained so many descriptions that it was necessary to have the typesetting done in a larger place than O'Neill, in order to have the notice published within the statutory time. The plaintiff received the notice about 2 o'clock in the morning of July 2, and took it to Sioux City to be put in type. Prior to this time the Independent had published in its account of the proceedings of the county board the resolution by which the Frontier was designated as the paper to publish the notice. Before giving the notice to the plaintiff the county treasurer consulted the county attorney, Arthur F. Mullen, and was advised by him that the designation by the county board as shown by the record of proceedings was not a legal designation, and that it was his duty to designate the newspaper in which the notice should be published.

On the 3d day of July an action in mandamus was brought by the owner and publisher of the Frontier against the county treasurer to compel him to deliver the notice to him for publication. This writ was denied by the district court. On appeal to this court it was held, ALBERT, C., writing the opinion, that, while the relator was entitled to the publication of the notice under the facts shown, yet the district court was justified in denying the writ, because when the case was heard the time was too short for the Frontier to prepare and publish the list within the time required by law. *State v. Cronin,* 75 Neb. 738. It may be regarded as settled by this decision that, the county board having acted in the matter of designating the newspaper to publish the notice, the county treasurer, while authorized to prepare the notice and deliver it to the printer, had no right to divert its publication from the newspaper in which the county board had decided that it should be published.

The notice was published in the Independent, as was also, some time later, the notice of sale of the land and lots foreclosed upon by tax decree. No further action was taken by the county board respecting the publication of notice. Three extra copies of each

number of the paper were furnished, as the statute provides, to the county clerk, the auditor of state, and the county treasurer, and proof of publication was duly filed. After the decree was rendered many taxpayers paid the amount of the decree, including a docket fee of $1 upon each description. A large number of tracts upon which the taxes were not paid were sold to private bidders at the sale under the decree, and a large number of said tracts were bought in by the county board as trustee, under the provisions of the law. The record shows that the county board attended the sale for taxes day by day until the bulk of the lands had been disposed of; that the county collected large amounts of money as taxes, and that the county treasurer collected $4,263 docket fees, on the tax suit. All this money was turned into the general fund of the county. In *State v. Fink,* 73 Neb. 360, where it appeared that a notice of this nature had been irregularly published, it was held that the publication, under the liberal provisions of the statute, was sufficient to confer jurisdiction upon the district court to render the decree. So that the county received equal benefit from the publication in the newspaper of the plaintiff to that it would have had if the publication had been made in the Frontier.

If the evidence of the plaintiff is believed, there was no collusion between him and the county treasurer, nor was the giving of the notice to him for publication the result of deliberate, wrongful action on the part of that officer, and this seems to be the finding of the trial court. The action of the treasurer was very severely stigmatized by Commissioner ALBERT in *State v. Cronin, supra,* "as a wanton disregard of duty and a reckless attempt to thwart the purpose of the governing body of the county." It is now insisted that the evidence in this case, that his action was taken under the advice of the county attorney, was not before the court in that action, but, even so, we are inclined, in view of the evidence before us, to be

somewhat skeptical as to there being any substantial doubt upon his part concerning the sufficient designation of the Frontier by the county board.

The question presented is whether or not one who furnishes material and performs services for a county under a void contract, from the result of which service the county has secured a financial gain, can be permitted to recover the reasonable value thereof, and, if so, what is the rule by which to ascertain such reasonable value.

The defendant contends that this is an action upon contract, but we doubt whether the language of the petition is susceptible of this construction. It pleads substantially that the county determined to enforce all delinquent tax liens under the "scavenger act", and directed proper action to be taken thereunder; that under said direction the county treasurer prepared and filed the petition in the district court; that he caused a notice in statutory form to be published in the Holt County Independent, and that the county treasurer designated the Holt County Independent as the newspaper in which the said notice should be published; that the treasurer made this designation, and that plaintiff received the notice, and published the same in good faith; that the defendant and the county board of said county acquiesced in the publication of the notice during the four weeks that it was published, received and used copies of the same, acted under the decree, and ratified the publication by the plaintiff; "that the reasonable, just and true charge for publishing said notice for said four weeks in said newspaper was the sum of $2,669.50"; that by reason of the publication of said notice and the approval thereof, and the ratification thereof, and by reason of each and every one of the said acts, there became due to the plaintiff, and is due him for publishing said notice, the sum of $2,669.50. The second count in the petition is for the publication of the tax sale notice after decree, and is couched in like terms to the first count, except as to the time of publication and the amount due. Both counts

allege the purchase of several hundred parcels of real estate by the defendant at the sale made under the notice and decree, and the realization of a large amount of money by reason of the same.

This can hardly be said to be an action upon contract. We think it rather to be an action for the reasonable value of the services performed. But the defendant contends that the plaintiff cannot recover in this case as upon an implied contract, because the treasurer had no authority to make the contract, and that, if the treasurer was not authorized to make the contract, then no liability can attach against the county upon any ground of implied contract; that all persons dealing with officers or agents of counties are bound to ascertain the limits of their authority or power as fixed by the statute or the organic law, and are chargeable with the knowledge of such limits, and that no estoppel can be created by the acts of such agent or officers in excess of their statutory powers, citing *Hall v. County of Ramsey*, 30 Minn. 68; *Hampton v. Commissioners*, 4 Idaho, 646, 43 Pac. 324; *Bartholomew v. Lehigh County*, 148 Pa. St. 82; *Endion Improvement Co. v. Evening Telegram Co.*, 104 Wis. 432, and other cases.

The plaintiff on his part maintains that a distinction may be drawn between the principle of the cases above referred to and the instant case. He concedes that, where a public official has no authority under any conditions to request the performance of a service, such as the printing of an election notice or the proceedings of the board of supervisors, from which the public corporation gets no financial return or property, then the county or municipality may escape liability. But he contends that there is another class of cases which establish the principle that, where the county or municipality engages in a business undertaking of some kind, where there is no valid contract or where the public officer who makes the contract is authorized under certain circumstances to do so, but not under others, or where there is irregularity in

making the contract, but where the county or municipality received the money, service or property of another in a business way, and for its financial advantage, and to its profit uses the money or property or services of another, then in either of such instances the county or municipality must pay. It is also argued that, when a legal notice is given to a printer for publication, and nothing is said as to compensation, there is an implied contract to pay the legal rate, and counsel cites a number of cases to the effect that, where a fee is fixed by statute for the printing of a notice, the printer is entitled to it, even though it is sought by contract to limit his compensation.

We will first examine the cases cited by the county to support its contention that it is not liable for the publication of the notice. In *Hall v. County of Ramsey*, 30 Minn. 68, the action was for damages for breach of an alleged contract for publication by plaintiff of the delinquent tax list. We infer from the opinion that no publication had been made. The court held that under the statute the county commissioners were not authorized to make the contract for the breach of which the plaintiff sought to recover, and sustained a demurrer to the petition. Evidently this is not a parallel case. In *Hampton v. Commissioners*, 4 Idaho, 646, a county board made a void contract for the employment of the plaintiff as county attorney. The plaintiff's claim was for $4,142 for legal service performed in one year for a county with a voting population of 780. The claim was for more than the combined salary of the attorney general and of the district attorney, who was the proper legal officer of the county. The court held that the plaintiff could not recover upon an implied contract for services, for the reason that there was no authority vested in the board to make the contract, but said, also: "The doctrine that if a municipality obtain the money or property without authority of law, it is her duty to make restitution or compensation, not from any contract entered into by her on the subject, but from the general obligation to do

justice which binds all persons, whether natural or artificial, does not apply here." In *Bartholomew v. Lehigh County,* 148 Pa. St. 82, a sheriff, after having procured the publication of an election notice in four newspapers under a statute which provided the publication should be in "not more than four" newspapers, procured another newspaper to print the notice. After the county had paid the four newspapers first authorized as certified by the sheriff, the fifth presented a claim, which was refused. The court held that the sheriff could not bind the county for the cost of the publication in more than four newspapers, and that, if the sheriff exceeded his authority, "it is a question between the plaintiff and that officer, and one in which the county of Lehigh has no concern." It will be seen that in this case the county derived no substantial benefit from the publication, the requisite legal notices having already been published and paid for. In *Endion Improvement Co. v. Evening Telegram Co.,* 104 Wis. 432, a county clerk had given to plaintiff for publication the usual election notice, and also, under a misapprehension of the law, the entire banking law, as a question to be voted upon. The court held that the publication of the banking law "was absolutely without authority of law, and not binding upon the county. * * * The clerk had no right to make any such contract, and no duty rested upon him to act as he did. * * * He stood as the mere agent of the county, with no power or authority to cause or contract for any publication except such as the law prescribed." It is clear that no liability would attach to the county in such a case. The county received no benefit from the publication of the banking law, and the clerk had no more right to publish it than he had to publish a circus poster and charge it to the county.

In the case at bar the notice was a legal notice in all respects, and one from the publication of which the county received a substantial benefit, which clearly distinguishes it from the above cases, except, perhaps,

*Hampton v. Commissioners, supra,* in which the language of the court seems to indicate it thought the whole transaction a fraud upon the people of the county. In this case the publication of the notice was not beyond the power of the county, but was strictly within its authority. The treasurer was the officer vested with the duty of the preparation of the notice, and, under some circumstances, the selection of the publisher. *World Publishing Co. v. Douglas County,* 79 Neb. 849. If the notice had been published by the properly designated newspaper, as well as by the plaintiff, it is clear there could be no recovery here, for in such case the county would receive no benefit from this publication, and the case would be the same as *Bartholomew v. Lehigh County, supra,* and the other cases cited by defendant; but the labor and material of plaintiff was productive of actual gain.

We are not very strongly impressed with the contention of plaintiff that the county authorities ratified the unauthorized act of the treasurer. Under the circumstances, the statutory time for publication having arrived, the county authorities were placed in the position of being compelled either to allow the publication of the notice, which was essential to the proceedings, to go on, or to lose a year's time in the collection of delinquent taxes under the scavenger act. They were compelled by force of circumstances to receive the benefit of the publication or to jeopardize the interests of the county. At the same time we have come to the conclusion that the benefits of the unauthorized act of the treasurer in giving the notice to the wrong paper have been accepted and acted upon to such an extent as to make it unjust and inequitable for the county to refuse to pay for the services. It has for many years been the rule of this court that a public corporation or quasi-corporation, as against persons who have dealt with it in good faith and parted with value for its benefit, cannot set up mere irregularities in the exercise of power conferred in order to defeat recovery for the reasonable value of the services rendered

or property furnished.  2 Dillon, Municipal Corporations (3d ed.) sec 936.

In *Grand Island Gas Co. v. West,* 28 Neb. 852, where a city entered into an illegal contract with a gas company; and a taxpayer brought an action to restrain the enforcement of the contract, and to restrain the gas company from prosecuting any suit at law or in equity to recover compensation for light furnished, it was held that the contract was illegal, and the taxpayer could maintain an action to cancel the same, but that the city would be required to pay the reasonable value of the light furnished prior to the bringing of the suit.  This was followed by *Lincoln Land Co. v. Village of Grant,* 57 Neb. 70, in which case the rule is laid down: "Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received.  In such an action it is unnecessary to establish a ratification of the contract."  In the opinion the case of *Tullock v. Webster County,* 46 Neb. 211, cited by defendant, was distinguished.  In the latter case it was held that, as there was no power to make the contract, there could be no authority to ratify it, but in the *Lincoln Land Company* case, as in the case at bar, the power to contract for the service existed, but the manner of exercising the power as prescribed in the statute was not followed.  The doctrine of this case was again considered in *Rogers v. City of Omaha,* 76 Neb. 187, *Cathers v. Moores,* 78 Neb. 17, and *Nebraska Bitulithic Co. v. City of Omaha,* 84 Neb. 375.

*Second Congregational Church v. City of Omaha,* 35 Neb. 103, was a case where an appeal had been taken by a landowner from the assessment of damages made by certain appraisers in proceedings taken by the city to change the grade of the street.  The city attempted to defend against the claim for damages by setting up defects in the proceedings.  The court said: "To us it

appears unjust, inequitable, and contrary to every principle of right to permit the city, after it has damaged property by changing the grade of the street upon which it abuts, to urge defects in its proceedings to defeat an appeal taken by the landowner to recover a fair compensation for the damages sustained. To do so would be to allow the city to take advantage of its own wrong after it had accomplished that which it undertook to do, the change of the street grade. Such a rule courts should not sanction."

The same doctrine has been declared by the supreme court of the United States in *Hitchcock v. Galveston*, 96 U. S. 341, and is also approved in *City of East St. Louis v. East St. Louis Gas Light & Coke Co.*, 98 Ill. 415, 38 Am. Rep. 97; *Argenti v. City of San Francisco*, 16 Cal. 255; *Lines v. Village of Otego*, 91 N. Y. Supp. 785; *City of Valparaiso v. Valparaiso City Water Co.*, 30 Ind. App. 316; *Butler v. Board of Commissioners*, 15 Kan. 178; *Coit v. City of Grand Rapids*, 115 Mich. 493; *County of Jackson v. Hall*, 53 Ill. 440; *Crump v. Board of Supervisors*, 52 Miss. 107; *State Board of Agriculture v. Citizens Street R. Co.*, 47 Ind. 407, 17 Am. Rep. 702; *Louisiana v. Wood*, 102 U. S. 294; *Salt Lake City v. Hollister*, 118 U. S. 263; *Board of Commissioners v. Skinner*, 8 Colo. App. 272; *Central Bitulithic Paving Co. v. City of Mt. Clemens*, 143 Mich. 259; *Kramrath v. City of Albany*, 127 N. Y. 575; *Town of New Athens v. Thomas*, 82 Ill. 259; *Leonard v. Long Island City*, 20 N. Y. Supp. 26.

We are of opinion that this case falls within the doctrine of the cases cited. The publication of the notice was within the power of the county, and its preparation and delivery to the proper newspaper within the legal power and duty of the treasurer. The designation of the newspaper might or might not be within his authority, depending upon whether the county board had failed to act. He acted unlawfully in designating plaintiff's newspaper and in delivering the notice to him for publication, but, plaintiff having rendered the services, and the county

having received the benefit of the same, and having received a sufficient amount of money in payment for the publication of the notice from taxpayers to pay the reasonable value of the services rendered, it cannot now take the benefit of the plaintiff's labor and material and escape all liability upon the plea of lack of authority upon the part of the treasurer. To allow it to deprive the plaintiff of his property in the manner sought, and under the circumstances shown, would be to countenance action on the part of a county which would be considered grossly reprehensible upon the part of an individual. We cannot permit such spoliation.

The question remains: How shall the reasonable value of the services be ascertained? Is the statutory fee for printing legal notices to be taken as the value where no contract has been made? This is the measure applied by the district court, and, if it is the true measure, the judgment must be affirmed. No evidence was offered as to value. Plaintiff's counsel seems to rely with great confidence upon the case of *Bee Publishing Co. v. Douglas County*, 78 Neb. 244. The facts in the two cases, however, are totally dissimilar so far as the controlling features are concerned. The controversy as to the right of the Bee Publishing Company to publish the proceedings first came before this court in *State v. Fink*, 73 Neb. 360, which was a mandamus suit brought to compel the county treasurer of Douglas county to deliver the notice to the World Publishing Company for the reason that on the 2d day of July, 1904, the Omaha Evening World Herald had been designated by the board of county commissioners. The opinion shows that in the month of June, after the petition had been filed, and at a time when the county board had taken no action, the county treasurer delivered the notice for publication to the Omaha Bee. When the case reached this court, the notice had been published, and, the time having gone by in which a new publication could be of any avail, the writ was refused. On the evidence then presented, the commission and court were of

the impression that the designation made by the county
board was made within a reasonable time, and that the
designation by the treasurer was premature, but this point
was not decided, the opinion saying: "The most that the
relator can contend for is that the 'Bee' was not desig-
nated in the manner prescribed by the act. Whether this
was so or not, the issues in this case do not call upon us
to decide." The case cited and relied upon by counsel
was a later controversy between the Bee Publishing Com-
pany and Douglas county over the amount claimed to
be due for the publication of the same notice. The World
Publishing Company intervened, contending that the
county was not liable, for the reason that the Bee was
not legally designated for the publication of the notice.
This raised a direct issue as to the legality of the desig-
nation. Upon a consideration of the evidence then sub-
mitted, both the district court and this court held that
the designation of the Bee by the county treasurer was
legal and proper, and that the publication was in all
respects valid. This being so, the plaintiff's contention,
that the holding in that case that the printer was entitled
to the statutory fee governs this case, cannot be sustained.
In that case the designation was legal. In this case it
was illegal. In that case the recovery is based upon the
contract. In this case it is based upon the doctrine that
one shall not take and keep another's property inequi-
tably, even though no legal right to recover exists. While
the action is legal in form, the doctrine upon which this
and other courts have allowed recovery in such cases is
essentially equitable in its nature. Under strict legal
principles no recovery could be had upon the contract,
but it would be manifestly unfair that one party should
have the benefit of the labor and property of the other
without recompense. Such a result is opposed to natural
justice, and the courts will not allow it. Generally they
will not allow profits which might have been obtained if
the contract had been legal and valid, and if recovery
were had according to its terms, but will confine the re-

covery to such sum as will reasonably compensate the party whose services or property have been devoted to the advantage of the other. If recovery could be had to the same extent under an illegal as under a legal contract, the temptation to public officers to pay no regard to statutes might often prove too strong for them to overcome in order to benefit their friends. The principle which applies is that of reimbursement. Where a county or municipal corporation has received money in payment for an invalid issue of bonds, they have usually been compelled to refund the money paid them, with interest, regardless of whether the bonds were sold at a premium or discount. The reasonable value which the plaintiff is entitled to recover in this case would seem to be the actual cost of rendering the services and furnishing the material necessary, including all expenses incurred, but excluding profits.

The plaintiff contends that, the county having received a docket fee of $1 in each case from the taxpayer, this money in equity belongs to him to the extent of the statutory fee for printing legal notices. But this cannot be so, because the dollar fee is paid into the general fund of the county, and no specific part of it is appropriated by the statute to any specific purpose. In the scavenger act no sum is fixed as compensation for printing the notices. In *Bee Publishing Co. v. Douglas County, supra,* it was held that, no fee being fixed, the statutory fee for ordinary legal notices was the proper fee to be paid the printer when the publication was legally authorized. We are of opinion that, where there is no contract, the statutory fees cannot *ipso facto* be taken as the measure of damages. In *Clark v. Lancaster County,* 69 Neb. 717, which was an action by a taxpayer to prevent one Sheeley from building certain bridges and to prevent the collection of payment for the same, it appeared that the contract was invalid and the action of the county board under it was unlawful. The district court allowed Sheeley a decree for the amount of his labor and material

furnished. It was complained in this court that the
amount so found was not large enough. This court found
it sufficient, and declined to allow more than Mr. Shee-
ley's outlay in money and property, refusing to allow
profits. We are satisfied to follow this precedent. This
being so, the judgment of the district court must be re-
versed and the cause remanded for further proceedings.

REVERSED.

BARNES, J., took no part in the consideration or de-
cision in this case.

ROSE, J., dissenting.

I recognize in the opinion of the majority a lofty pur-
pose to administer justice, but I am not fully convinced
that plaintiff should recover the reasonable value of his
services. In my judgment the finding that the publish-
ing contract is void, and that in consequence plaintiff
cannot recover the compensation allowed by law for per-
formance of a valid contract, should result in a dismissal
of the case. The power to designate the newspaper for
the purpose of publishing notice was conferred by statute
upon the county commissioners. That power was legally
exercised, and plaintiff's newspaper was not selected.
This is shown irrefutably by the majority opinion and by
a former decision. *State v. Cronin*, 75 Neb. 738. The
county treasurer has no power whatever to select the
newspaper, except "where the county commissioners fail
to do so." Those officers having made the designation
according to law, the county treasurer was absolutely
without statutory authority to designate plaintiff's news-
paper. The county treasurer's power is derived alone
from legislation, and, having none from that source, he
could not by any act on his part or by the aid of any
other person invest himself with such power. If, in des-
ignating plaintiff's newspaper, he acted conscientiously,
with a disinterested zeal for the public welfare, and with-

out a thought of personal interest or of favoritism, the question of power remained exactly the same, since it could come alone from the lawmakers. The opinion of the county attorney, however honestly expressed, did not take the place of legislation or change the law. Plaintiff in attempting to make a contract to publish the notice was, like the county treasurer, required to know that the legal designation formerly made was already a matter of public record. Plaintiff in dealing with a county officer was also required to know the law, and neither the treasurer nor the county attorney as such was his legal adviser. If the finding of the district court that plaintiff acted in good faith is true as a matter of fact, it cannot supply legislative power, give vitality to a void act, legalize a claim arising in violation of law, or conceal knowledge imparted by a public record. County officers cannot ratify their own unlawful acts either directly or indirectly. To hold otherwise would permit them to defy the laws by which they are governed. In this case plaintiff was a party to the wrongdoing in defeating the order of the county board and in evading the act of the legislature. When he was bound to know from the public records and statutes that another newspaper had been lawfully designated, he joined the county treasurer in a void agreement which had the effect of annulling a valid order of the county board and of circumventing the law under which he assumed to act. How county business shall be transacted depends on the statutes. These statutes are general and many of them apply to all the counties. They declare the public policy of the state in the management of county affairs. Plaintiff departed from this policy in publishing the notice. He assumed to act for the county in transacting public business. He usurped the functions of a duly appointed representative of the county who was authorized to publish the notice. He united with the county treasurer in making a void contract in violation of law. Compensation under such circumstances is not allowed by statute. The county has

no statutory authority to make an allowance for his serv-
ices. The county treasurer cannot find in the statutes
the power to disburse public funds for such a purpose.
No statute makes the county liable to plaintiff for any
sum whatever. He has come into court to reap the bene-
fits of his wrongdoing. He should be left in the same
situation as other plaintiffs who make and seek to en-
force contracts which violate public policy. The courts
should leave him where they find him. County officers
and those who deal with the county in transacting public
business should keep in the straight and narrow path
pointed out by statute. There is peril in allowing com-
pensation for public services performed in any other
course.

Under the doctrine announced in the opinion of the
majority, plaintiff is permitted to recover the reasonable
value of his services. What service did plaintiff perform
for the county? By publication he notified tax-debtors
that the county had filed a petition to enforce the collec-
tion of the delinquent taxes. The services were official
and were performed on behalf of the public. The official
duty of notifying tax-debtors that they have been sued is
an ordinary function of the sheriff. For reasons well
understood that duty was imposed by statute upon the
publisher of a newspaper designated by the county com-
missioners. The character of the services required was
not changed by the transfer of authority from the sheriff
to the publisher of a newspaper. When such services are
performed by a publisher, the composition, ink, paper and
distribution of newspapers are mere incidents of official
duty, and correspond in legal effect to the copy of a writ
which has been served upon a defendant by the sheriff.
Within the meaning of the statute a publisher, when
legally designated by the county commissioners, is an
officer. The services performed by him are official serv-
ices. These propositions are sanctioned by precedent.
The supreme court of Iowa held: "To authorize recovery
against a county for official printing, the publisher must

show both title to the appointment as official printer and performance of the service. Under this rule, a publisher cannot have compensation for public printing pending a contest of his right to the position which is finally decided against him, even though the county board acquiesce in the service and his successful. competitor has been denied the right of recovery therefor." *Smith v. Van Buren County*, 125 Ia. 454.

Plaintiff's claim is one for compensation for official services. His relation to the county was that of a *de facto* officer. As such he cannot recover. "None but the officer *de jure* can successfully claim compensation for official services." *Commonwealth v: Slifer*, 25 Pa. St. 23; *Smith v. Van Buren County*, 125 Ia. 454. The law is that an officer cannot recover on a *quantum meruit* for services performed, unless a board or other tribunal is authorized by statute to fix compensation. "A public officer must perform every service required of him by law, and he must look to the statute for his compensation. If it provides none, then the services are gratuitous." County commissioners are without power to allow as compensation for official services any sum other than that fixed by statute. *Logan County v. Doan*, 34 Neb. 104; *State v. Meserve*, 58 Neb. 451; *State v. Silver*, 9 Neb. 85; *State v. Wallichs*, 15 Neb. 457; *State v. Wallichs*, 14 Neb. 439; *Bayha v. Webster County*, 18 Neb. 131; *State v. Benton*, 31 Neb. 44; *State v. Roderick*, 25 Neb. 629. An officer cannot bind himself by an agreement to accept for his services a less sum than the statute allows. *Gallaher v. City of Lincoln*, 63 Neb. 339.

Under the judgment pronounced it becomes the duty of the district court to ascertain and decree the reasonable value of plaintiff's services, without reference to statutory compensation. This is equivalent to a decision that the county commissioners, before this suit was brought, had power to ascertain and direct the county treasurer to pay the reasonable value of plaintiff's services. This power is not found in any enactment of the legislature. It fol-

lows that county boards have a power in addition to that conferred by statute, and may administer the rule in equity announced in the syllabus, as occasion may arise. I take a different view of the law. I am convinced that neither the district court nor the county commissioners have the authority ascribed to them, and that the doctrine announced in *Clark v. Lancaster County*, 69 Neb. 717, is not applicable to the present case. Plaintiff should not be permitted to recover to any extent. Entertaining the views expressed, I am compelled to dissent from the opinion of the majority.