# ARROW PUB. CO. v. CHEROKEE COUNTY.

No. 4265.   Opinion Filed May 11, 1915.

(148 Pac. 996.)

**NEWSPAPERS—Publication of Delinquent Tax List—Selection of Newspaper.** Section 7397, Rev. Stat. 1910 Ann., provides that the county treasurer shall give notice of the sale of real property for delinquent taxes by publication thereof once a week for three consecutive weeks, commencing after the 1st day of October preceding the sale, in some newspaper in the county, to be designated by the board of county commissioners, and if the board of county commissioners shall fail to designate such paper, then in a paper to be selected by the county treasurer. Under this section it is the duty of the board of county commissioners to designate the newspaper in which the delinquent tax list for the current year shall be published, provided said board designates said paper prior to the 1st day of October of that year; but in case the board of county commissioners fail to designate such newspaper prior to that date, to-wit, the 1st day of October of the current year, or if the newspaper so designated by the board shall refuse to publish the tax list under the designation or contract made by the board of county commissioners prior to the 1st day of October, it then becomes not only the privilege but the duty of the county treasurer to select some newspaper in which the delinquent tax list shall be published for that year.

(Syllabus by Robberts, C.)

*Error from District Court, Cherokee County;*

*John H. Pitchford, Judge.*

Action by the Arrow Publishing Company, a corporation, against Cherokee County. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions to enter judgment for plaintiff.

*W. W. Hastings* and *J. I. Coursey,* for plaintiff in error.
*George M. Hughes,* for defendant in error.

ROBBERTS, C. This case comes here on appeal from the district court of Cherokee county. The facts are practically the same as found in the case of *Cherokee County Publishing Co. v. Cherokee County*, being case No. 4085, in this court, decided at this term and in substance as follows:

On the 15th day of April, 1911, the board of county commissioners of Cherokee county designated the Tahlequah Sun as the newspaper in which legal notices, including the delinquent tax list for the year 1911, should be published, and in pursuance thereof entered into a contract with said paper to publish said tax list for that year at the rate of one cent a line. Prior to the 1st day of October, 1911, the owners and managers of the Sun notified the county commissioners that they would not comply with the one cent a line contract, and refused to publish the list under that contract. On the 3d day of October the board, so far as it could legally do so, made a new contract with the Sun to publish the list at four cents a line. In the meantime, viz., on the 2d day of October, the county treasurer entered into a contract with the Arrow Publishing Company, plaintiff in error, to publish said list. Both papers published the list, and both filed claims with the county clerk for payment thereof—the Sun for $1,182.12, and the Arrow for $1,226.04. The Sun's claim was allowed by the board, and the Arrow's claim was rejected.

The county attorney appealed from the allowance of the Sun's claim to the district court of Cherokee county, where the allowance of the board was reversed by the court, and the claim disallowed. The case was then brought to this court on appeal and recently affirmed. The Arrow appealed from the action of the board, and the district court affirmed the disallowance of its claim. That case is now before this court on appeal. In addition to the testimony which is properly brought up in the case-made, counsel for both parties enter into a stipulation as to certain facts, as follows:

"It is agreed by and between the attorneys on both sides of this action as follows:

"First. That the county commissioners of Cherokee county, Okla., on the 15th day of April, 1911, made a contract with the editor and manager of the Tahlequah Sun for the county printing of Cherokee county, agreeing to pay one cent a line therefor.

"Second. It is agreed that the meeting of the board of county commissioners, on the 9th day of September, was not legally called, and was an illegal meeting, and all proceedings had upon that date were illegal.

"Third. That the Sun, through its editor and manager, prior to the 1st day of October, 1911, and the bondsmen or sureties on the bond, under the contract secured in April, 1911, hereinabove referred to, notified the board of county commissioners and the county clerk of Cherokee county, Okla., that he would not comply with the one cent a line contract, entered into in April, 1911, and that his notification to them was generally known.

"Fourth. That the county treasurer, on the 2d of October, 1911, gave the contract for the printing of the delinquent tax list to the Tahlequah Arrow, agreeing with the Arrow that they should have four cents a line."

From the foregoing, we find the controlling facts eo be:

(1) On the 15th day of April, 1911, the board designated and contracted with the Sun to publish a tax list for the year 1911 at one cent a line.

(2) Prior to the 1st day of October the Sun notified the board and county clerk that it would not fulfill or comply with its contract to publish the list, and refused to do so.

(3) In the forepart of September the board gave notice and received bids from the Sun and other papers for publishing the list, but the action of the board was held to be illegal for some reason, and can be considered only for the purpose of showing that the April contract had been abandoned so far as both parties

to it were able to do so, and also that it was not the intention of the Sun to publish the list under that contract. The question as to whether the Sun was legally relieved from all obligations ·under the contract is not involved here, and therefore immaterial. It is sufficient, so far as this case is concerned, that it had refused and did not intend to publish the tax list under the April contract, and that was the only pretense of contract it had for the publication until October 3, 1911.

(4)   On the 2d day of October, the county treasurer selected and contracted with the Arrow, plaintiff in error, and delivered to it an official copy of the list for publication, which was published by it, as required by law, at the agreed rate of four cents a line.

(5)   The county treasurer did not deliver a copy of the tax list to the Sun, and the list published by it was not a legally and properly authenticated tax list, such as is contemplated by the law, for publication.

Under this state of facts, the board of county commissioners had no right, power, or authority to enter into the alleged contract made with the Sun on the 3d day of October, 1911, and anything it did or attempted to do in that behalf, on that day, was void. It therefore follows that the county treasurer was· acting within the scope of his authority in selecting and contracting with the Arrow on the 2d lay of October, and further that the contract was valid and binding on the county, and that the county is justly indebted to it for the sum of $1,226.04, with interest at 6 per cent. from the 15th day of November, 1911.

In passing upon this same question, in *Cherokee County Publishing Co. v. Cherokee County,* recently decided, this court, after quoting the section of the law involved (section 7397, Rev. Stat. 1910), says:

"The meaning is:   The treasurer shall give notice   *   *   *

commencing after the 1st day of October, in some newspaper in the county, to be designated by the board of county commissioners, and, if the board of county commissioners shall fail to designate such paper, then in some newspaper to be selected by the county treasurer. The treasurer is to give the notice, after the 1st day of October. To do so, he must furnish the list. The county commissioners shall designate the paper, but if they fail or neglect to do so, impliedly and necessarily, by the 1st day of October, then it becomes not only the privilege but the duty of the county treasurer to select the paper."

The plaintiff in error was legally selected by the county treasurer, and the official list delivered to it for publication, which was a necessary condition precedent to the publication. As said by the court:

"The publishing of a list of the real estate which was to be sold for delinquent taxes is a very important matter to the taxpaying public, and one which, to a certain extent, affects the title to the real estate of the county, and a duty which public policy and the stability of titles requires should be done with accuracy and skill." (*Allen & Rixse v. County Com'rs,* 12 Okla. 609, 73 Pac. 288.)

From the foregoing it is apparent that this case should be reversed and remanded to the district court of Cherokee county, with directions to render final judgment therein against the county, and in favor of the plaintiff in error, for the sum of $1,226.04, with interest at 6 per cent. per annum from the 15th day of November, 1911; and it is so recommended.

By the Court: It is so ordered.