JOHN S. ALLEN AND ED C. RIXSE, *partners doing business· under the firm name and style of Allen & Rixse,* v. BOARD OF COUNTY COMMISSIONERS OF CLEVELAND· COUNTY, OKLAHOMA TERRITORY.

(Filed June 8, 1903.)

**PUBLICATION OF DELINQUENT TAX LISTS.** Under section 5, of article 3, of chapter 43, of the Laws of 1895, entitled "Revenue," amending section 9 of art. 10 of the Laws of 1893, it is made the duty of the county treasurer to give notice of the sale of real property for taxes by the publication thereof, once a week for three consecutive weeks, commencing after the third Monday in October preceding the sale, in some newspaper in the county. * * * Such notice shall contain a notification that all lands on which the taxes of any year remain due and unpaid will be sold, and the time and place of the sale, and said notice must contain a list of the lands to be sold, and the amount of taxes due. * * * And in selecting such newspaper, he is not bound to select the particular newspaper with which the county commissioners may have made a contract to do the county printing.

(Syllabus by the Court.)

*Error from the District Court of Cleveland County; before Benj. F. Burwell, Trial Judge.*

*Newell & Jackson* for plaintiffs in error.

*A. Nicodemus, Benj. F. Wolf* and *S. H. Harris,* for defendant in error.

### STATEMENT OF FACTS.

Plaintiffs, John S. Allen and Ed C. Rixse, commenced their action in the district court of Cleveland county, Oklahoma Territory, alleging that they were partners and were during all of 1898, and for a long time prior thereto, and ever since have been owners and publishers of the "People's Voice" a weekly newspaper published and printed at Norman, in Cleveland county, Oklahoma Territory.

That during the year 1898, Robert Aniol was the county treasurer of Cleveland county, Oklahoma Territory.

That said county treasurer, Robert Aniol, prepared the delinquent tax list for the year 1898, for the taxes for the year 1897, duly certified, and delivered it to said Allen & Rixse and requested them to publish it as required by law. That said Allen & Rixse did publish said delinquent tax list as requested by said county treasurer. That the sale of lands for taxes in 1898 was based upon the notice published by said Allen & Rixse in their paper, "The People's Voice."

That on the 25th day of September, 1899, said plaintiffs, Allen & Rixse, filed their claim with the county clerk of Cleveland county for $196.85 for publication of delinquent tax list, which account was on the 2nd day of October, 1899, disallowed by the defendant—whereupon said plaintiff duly ap-

pealed to the district court of Cleveland county, which appeal was duly filed in the clerk's office of the district court of Cleveland county on the 23rd day of February, 1900, defendant then filed its answer to plaintiff's claim, which answer set up as a defense to said claim that said defendants had let the county printing and publishing of delinquent tax list to another paper, this being the only defense insisted upon by defendants in the court below, to which answer plaintiffs filed their reply.

After hearing the evidence in said cause, the court decided said case in favor of said defendants and against plaintiffs for costs, to which plaintiffs excepted, filed their motion for a new trial, which was overruled by the court, to which plaintiffs excepted, now except and bring the case here for review.   Reversed and remanded.

Opinion of the court by

IRWIN, J.:   The decision of this case depends entirely upon the question:   Who has the legal right to determine in what newspaper delinquent tax lists shall be published, the county commissioners or the county treasurer?

The amendment to the Statutes of the Territory of 1893, section 9, of article 10, entitled "Revenue," as amended by section 5, of article 3, of chapter 43 of the Laws of 1895, which was the law on the subject in force at the time the services mentioned herein were rendered, reads as follows:

"The treasurer shall give notice of the sale of real property by the publication thereof once a week for three consecutive weeks, commencing after the third Monday in October preceding the sale, in some newspaper in the county. * * *"

Then said section provides in detail what such notice shall contain as to the description of the property and a description of the taxes which are delinquent.

Now this section makes it the duty of the county treasurer to publish this list, and the natural inference would be that the party upon whom the law cast the duty, should be the proper person to select the medium through which this publication was to be made, and it being the duty of the treasurer to cause this publication to be made, it would seem to be his right to select the newspaper, unless a contrary intention of the legislature was manifest in the statute. This duty of publishing the delinquent tax list is only imposed by statute, and if the statute does not in express terms or by reasonable implication indicate a different intention, then the person whose duty it was to have the same published would be considered the proper person to select the agency by which this notice was given, and the legislative will carried out.

But it is contended by the defendants in error that this authority has been given to the commissioners of the county not in express terms, but by reasonable implication; and to support this contention, they cite running section 1785, Statutes of 1893, being section 19, of chapter 22, entitled "Counties and County Officers," which provides that the commissioners "shall have power to make all orders respecting the property of the county, to sell the public grounds of the county and to purchase other grounds in lieu thereof. * * *"

And also section 20 of the same chapter, which provides that "they shall superintend the fiscal concerns of the county and secure their management in the best manner, keep account of the receipts and expenditures, * * * * etc."

But we do not think these provisions reach or were intended to reach the point in controversy in this case.

The various sections of said chapter 22 contain provisions regulating the manner of election and qualification of county commissioners and defines their powers and duties. The fifth paragraph of section 19 of this section contains a provision specifying what blanks, plats and stationery shall be furnished by the commissioners to the various county officers therein named, including the county treasurer, to be paid out for the county treasury.

Section 20 of this chapter provides for printing a statement of the county receipts and expenditures for the year, but so far as we can find in said chapter there is no express authority given to the commissioners to publish delinquent tax lists, nor is any other general authority given to control and manage county printing, in general or special terms.

An examination of the statutes of the territory and the amendments thereto on the subject of revenue, will disclose what seems to us a significant fact, and one which sheds light upon the question of legislative intent as to the person whom the legislature intended should make the selection of a newspaper to publish the delinquent tax list in. The Revised Statute of Oklahoma, 1893, article 10, section 9, chapter 70, was as follows:

"The treasurer shall give notice of the sale of real property by publication thereof once a week for three consecutive weeks, commencing the first week in August preceding the sale in the official newspaper in his county. * * *."

This was the law on the subject until the act of 1895, article 3, chapter 43. Then the language of the act was

changed, the only change being as to the time of publication, changed from the first week in August to the third week in October, preceding the sale, and changing the words "official newspaper," to "some newspaper."

The act of 1895 reads as follows:

"The treasurer shall give notice of the sale of real property by the publication thereof once a week for three consecutive weeks, commencing after the third Monday in October preceding the sale, in some newspaper in the county. * * *"

So the law was by this amendment changed so that instead of reading, "by publication in the official newspaper in his county," it was made to read, "by publication in some newspaper in the county."

Now, if the question as to who should have the right to select an official newspaper for the county, it might reasonably be contended that as the county commissioners had control and management generally of the fiscal affairs of the county, they would be the proper authority to determine this question, and if they had made a choice of a newspaper which should do the county printing, and to be generally recognized as the official newspaper of the county, then as the law stood prior to the amendment of 1895, it might be reasonable to suppose that it would be the duty of the county treasurer to recognize such paper as the official paper of the county, and in obedience to the statute, publish the delinquent tax list in that paper, and he would have no choice in the matter, but it seems to us equally reasonable to suppose that when the legislature in its wisdom saw fit to take from the act the words "official newspaper" and substitute therefor the words "some

newspaper," it was for some definite and distinct purpose, and that therefore they made manifest their intention to in some manner change the law as to the newspaper in which said lists must be published. It would not be reasonable to suppose that the law-making power made this change of language without any purpose, or that the same was carelessly or thoughtlessly done; it would be more reasonable to suppose that when they made this change in the language of the law they had the act they were amending before them, and comprehended and understood the change they were making, and made such change for a well understood purpose.

The publishing of a list of the real estate which was to be sold for delinquent taxes is a very important matter to the tax paying public, and one which to a certain extent affects the title to the real estate of the county, and a duty which public policy and the stability of titles requires should be done with accuracy and skill.

It might be, and no doubt often is the case, that persons of inferior skill and inadequate facilities for doing the work properly, secure the work of doing the county printing on account of the lowness of their bid. Therefore it may be that the legislature had this fact in mind, and to secure more efficient work, this change was made to give the treasurer, who was charged with the duty, more latitude and a wider field of choice in his selection of a newspaper to publish his delinquent list in, and thus aid him in getting the work well done.

It certainly would seem to us that if the contention of defendant in error can be maintained, then this change in the wording of the statute is entirely meaningless, as it would leave the law as to what newspaper the list must be published

in, exactly as it was before the change, viz: That the treasurer must publish in the newspaper to be selected by the commissioners, to-wit: The official newspaper. Before the change in the law, the treasurer had no choice. He must publish in that newspaper that the commissioners had contracted with to do the county printing, as that was the official newspaper, and the one designated by the statute.

Now, if he must publish in the same paper after the change in the law, if his duties in this regard were pratically the same, the change from "official' to "some" newspaper was a useless, meaningless act.

Defendant in error by its counsel cite to sustain their position the case of *County Commissioners v. Sewell*, 3 Okla. 281, but we do not think that case is in point, as that case was a claim for rent of property for use of the county commissioners, and came strictly within the powers as defined within section 19, article 9, chapter 22, which relates to property of the county. We fail to see any application that case has to the one at bar.

They also cite some Kansas decisions of the supreme court of that state, but we think these decisions while they are good law in Kansas, and everywhere where a similar statute is in force, can have no application here, as our statutes are materially different.

Vol. 1, of the Compiled Laws of Kansas, 1889, section 1655, page 61, contains this provision:

"The county commissioners shall have exclusive control of all expenditures accruing, either in the publication of the delinquent tax lists, treasurer's notices, county printing or any other county expenditures."

If our law contained any such provision as this, there would be no doubt but this court would hold the same as the Kansas court has, but unfortunately for the defendant in error, our law does not contain this provision or anything similar thereto.

For the reasons herein expressed, we think the decision of the district court was error, for which the case should be reversed, which is accordingly done at the cost of the defendant in error, and the cause remanded with directions to the district court to grant the motion and order a new trial.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.