STATE, EX REL. DENNIS H. CRONIN, APPELLANT, V. DANIEL J. CRONIN, COUNTY TREASURER, APPELLEE.

FILED FEBRUARY 8, 1906. No. 14,479.

1. **Tax Sales:** NOTICE: PUBLICATION. Section 7, article IX, chapter 77, Compiled Statutes, provides for the publication of notice of the filing of a petition in the district court, under what is known as the "Scavenger Act," and that the county commissioners "shall designate the newspaper in which said notice, and in which all notices of tax sales made by the county treasurer" under said act "shall be published, *provided,* the county treasurer shall designate such newspaper where the county commissioners fail to do so." Among other proceedings of the county board, its record shows the following: "On motion, the printing of the scavenger delinquent tax list was awarded to the O'Neill Frontier." *Held,* That such record is sufficient to show a desig-

nation by the county board of a newspaper to publish the notice required by said section.

2. The writ of mandamus 'is properly denied, where it would be unavailing if allowed.

APPEAL from the district court for Holt county: JAMES J. HARRINGTON, JUDGE.  *Affirmed in part.*

*R. R. Dickson,* for appellant.

*A. F. Mullen* and *M. F. Harrington,* contra.

ALBERT, C.

This is an appeal from an order denying a writ of mandamus. The appellant is the owner and publisher of the "Frontier," sometimes known as the "O'Neill Frontier," a weekly newspaper published at O'Neill and of general circulation in Holt county. The appellee is treasurer of said county. In January, 1905, the county board of the county formally elected to enforce the collection of delinquent taxes against real estate under the provisions of chapter 75, laws 1903, commonly known as the "Scavenger Act," and which constitutes article IX, chapter 77, Compiled Statutes (Ann. St. 10644-10691). Section 5 of the act prescribes the form of a petition to be prepared by the county treasurer against the several tracts and lots of land against which there are taxes delinquent, and section 6 for the filing of such petition in the district court. Section 7 prescribes the form of a notice of the filing of such petition, and provides for the publication of such notice in a newspaper, and that there shall be published in connection therewith "a complete list of the lands and lots as shown in the county treasurer's statement of delinquent taxes," etc. It also contains the following provision: "The county commissioners of each county shall designate the newspaper in which said notice, and in which all notices of tax sales made by the county treasurer hereinafter provided for, shall be published, *provided,* the county treasurer shall

designate such newspaper, where the county commissioners fail to do so." The appellee prepared and filed the petition in accordance with sections 5 and 6, and, taking the position that the county board had failed to designate a paper in which the notice prescribed by sec. 7 should be published, designated the "Holt County Independent" as such paper. The appellant contends that his paper, the "Frontier," was designated by the county board to publish the notice, and, consequently, that it was the duty of the appellee to furnish him with such notice for publication. The contention is based on a motion adopted by the county board at a session held in April following its election, to proceed under the act in question. The record of the proceedings at that session, so far as is material now, is as follows: "On motion the printing of the scavenger delinquent tax list was awarded to the 'O'Neill Frontier.'" On the other hand, the appellee invokes the familiar rule announced in *State v. Bartley,* 50 Neb. 874, that a writ of mandamus will only be allowed where the relator clearly establishes his right, and nothing essential to that right will be taken by intendment. He then states his position thus: "Applying these rules to the facts of the present case the county treasurer, in order to interpret the resolution passed by the county board as a designation, would have to do so by intendment. He would have to interpret the word "award" to mean "designate"; that the words "scavenger delinquent tax list" meant the legal notice referred to in section 7, article IX, chapter 77, Compiled Statutes 1905; that the "O'Neill Frontier" meant the "Frontier."

That the county board did not employ the most apt and accurate language to designate a newspaper to make the publication will be conceded, and if the record on the motion stood alone, and unaided by other points of the record, it would leave room for doubt as to what the county board had in mind. But at the preceding sitting the board had adopted a formal resolution to proceed under the so-called "Scavenger Act" to enforce the collection of delin-

quent taxes.    By the use of the term "Scavenger" in the motion in question, the board clearly conveyed the thought that it was taking a step in pursuance of its resolution to proceed under that act.    The first step required of the board by that act, after the adoption of such resolution, was to designate a newspaper to publish the notice required by section 7.    With the duty of making such designation resting upon it and ripe for performance, the board "awarded the printing of the scavenger delinquent tax list" to a certain newspaper.    It is true the statute uses the word "designate" instead of "award," and that the two words are not synonymous.    But designate, as used in section 7, means to point out or select, and when the board "awarded" the printing of the list to a certain paper, it clearly pointed out or selected such paper to do the work. And, so long as it did that, whether it used one word or another is immaterial in the eyes of the law.    But it is pointed out that section 17, as well as section 7, requires the publication of a delinquent list, and the appellee insists that the language of the motion is equivocal, in that it does not show to which of the two lists or notices it refers.    By the provisions of section 7 the list is a part of the notice of the pendency of the suit, and is a complete list of the lands against which there are delinquent taxes and of the amount of taxes due on each lot or parcel of land described.    The list required by section 17 is a part of the notice of sale under the decree, and is merely a list of "all lands and lots on which decrees have previously been rendered."    The latter list is not the delinquent tax list, within the meaning of the act, nor as the term is generally understood.    Besides, the publication under section 7 precedes that under section 17 some months, and it is not to be presumed, nor would one fairly seeking information suspect, that the board passed over a present and certain duty to discharge one which was remote and to a certain extent contingent.    Nor do we attach any importance to the fact that the board omitted the term "notice," because by common usage the terms "list," "tax

list" and "delinquent tax list" are understood to refer to the notices or other matters with which such lists are included, and we have no doubt that the language employed by the board conveyed to the average reader that the board was dealing with the notice required by section 7 more clearly than would have been possible by terms technically more correct and accurate. It will be observed that, instead of awarding the publication of the matter, the board awarded the "printing." This is another slight inaccuracy of expression that leaves no one in doubt as to the intention of the board. "Print is familiarly used in the sense of 'publish,' and in that sense the word receives recognition in many if not all of the dictionaries." *Nebraska L., S.-G. & I. Co. v. McKinley-Lanning L. & T. Co.,* 52 Neb. 410; *Aetna Life Ins. Co. v. Wortaszewski,* 63 Neb. 636. It is also urged that the true name of appellant's paper is the "Frontier," while that named by the board is the "O'Neill Frontier." But the testimony shows that the appellant's paper is the only paper published in the county by the name of the "Frontier," and that it is also known as the "O'Neill Frontier." It is not at all probable that any one would be misled by the name used by the board to designate the paper. See *Fairchild v. City of St. Paul,* 46 Minn. 540, 49 N. W. 325. As was intimated in the case just cited, the main object of the statute requiring the designation of a paper is to advise the public where to look for notices like that in question. And we are satisfied that any person really seeking information on that point from the records of the county would not be left in doubt nor led astray by the record of the action of the county board in this case.

The appellee insists that the record of the county board, relied on as showing a designation of appellant's paper, is fatally defective, because it is not a command or direction to the county treasurer or any other person, and is in the past tense and a mere recital of a past transaction. In support of this position he cites *Prewit v. People,* 5 Neb.

377, and *Miller v. Burlington & M. R. R. Co.*, 7 Neb. 227. In the first of these cases the court held that a recital in the record that "thereupon the court sentenced the defendant, William M. Preuit, to be hanged by the neck until dead," etc., was not a proper judgment, but a mere recital of the fact that one had been rendered. The judgment in the second case was open to the same objection. It is hardly necessary to say that judgments of a court of record stand on a very different footing from the acts and proceedings of an administrative body. As to the records of the former, strictness has always been required, but, as to the latter, great liberality has been accorded. As was said in *Bartlett v. Eau Claire County*, 112 Wis. 237:

"All reasonable liberality must be accorded the minor deliberative bodies of the state; notably county boards, town meetings, school district meetings, and the like, where, by reason of the character and vocation of the men comprising such bodies, the technicalities of procedure are not strictly enforced, nor perhaps fully understood. We must not expect nor demand that the records of such meetings should be made up with the accuracy and technicality of those of monetary corporations, conducted under the direction of skilled counsel; nor, indeed, of the legislature itself."

We are satisfied, however, that the court was justified in denying the writ, because it appears to be conceded that it would have been unavailing had it issued, the time being too short after the decision of the district court to take the steps and make the preparation necessary to enable the appellant to publish the list within the time required by law. This condition of affairs was due largely to the fact that the appellee, by giving the notice and list to the other paper, which had sent it out of the state to be printed, had placed himself in a position where it would have been impossible to obey the writ promptly had it issued. That being true, the appellant's right to publish the list, at the time of the decision in the district court, was a mere abstract right, unattended by any possible

benefit to him, and it is well understood that such a right will not be enforced by mandamus, whatever may be done in some other form of action. *Gormley v. Day,* 114 Ill. 185; *State v. Westport,* 135 Mo. 120; *People v. Fitzgerald,* 13 N. Y. Supp. 663. But the situation was different when this suit was begun. At that time, had the appellee moved promptly to the discharge of his duty, the appellant could have made the publication. But the appellee chose rather to persist in his default until, however the court should decide, the appellant could not publish the list or notice. We are unable to view the conduct of the appellee in any other light than as a wanton disregard of duty and a reckless attempt to thwart the purpose of the governing body of the county. We are of the opinion, therefore, that while the writ was properly denied, under the circumstances, the costs of the proceeding should have been taxed to the appellee.

It is therefore recommended that the judgment denying the writ be affirmed, and the order taxing the costs to the relator be reversed, and the cause remanded, with directions to tax the costs of the proceeding to the respondent.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment denying the writ is affirmed, and the order taxing the costs to the relator is reversed, and the cause is remanded, with directions to tax the costs of the proceeding to the respondent.

JUDGMENT ACCORDINGLY.