## CHEROKEE COUNTY PUB. CO. v. CHEROKEE COUNTY.

No. 4085.    Opinion Filed May 11, 1915.

Rehearing Denied July 6, 1915.

(151 Pac. 187.)

1. **STATUTES—Construction—Legislative Intent.** Under the usual rule, statutes are to be construed according to the plain import of the language used, but it must always be borne in mind that the primary object to be obtained is the intention of the lawmakers, and, when any rule of construction defeats that intention, it must be abandoned. Rules of construction are but aids to the accomplishment of the primary object.

2. **COUNTIES—Review—Appeal Bond—Necessity.** Section 1640, Rev. Laws 1910, provides for two ways in which appeals may be taken to the district court from actions of the board of county commissioners by the county or taxpayers thereof. In order to perfect an appeal under this statute taken by the county attorney upon his own motion or upon the petition of taxpayers, it is not necessary, nor is the county or county attorney required under either provision for appeal, to give an appeal bond.

3. **NEWSPAPERS—Selection—Delinquent Tax List—Publication—County Treasurer.** Section 7397, Rev. Laws 1910, provides that the county treasurer shall give notice of the sale of real property for delinquent taxes by publication thereof once a week for three consecutive weeks, commencing after the 1st day of October preceding the sale, in some newspaper in the county, to be designated by the board of county commissioners, and, if the board of county commissioners shall fail to designate such paper, then in a paper to be selected by the county treasurer. Under this section it is the duty of the board of county commissioners to designate the newspaper in which the delinquent tax list for the current year shall be published, provided said board designates

said paper prior to the 1st day of October of that year; but, in case the board of county commissioners fail to designate such newspaper prior to that date, to wit, the 1st day of October of the current year, or if the newspaper so designated by the board shall refuse to publish the tax list under the designation or contract made by the board of county commissioners prior to the 1st day of October, it then becomes not only the privilege, but the duty, of the county treasurer to select some newspaper in which the delinquent tax list shall be published for that year.

4.  **CONSTITUTIONAL LAW — Counties — Claim Against County —Allowance—Notice of Appeal.**  To effect an appeal from the action of a board of county commissioners in allowing a claim filed against the county, it is necessary to serve notice of appeal upon the claimant, for the reason that the judgment of the district court in reversing the action of the board in allowing his claim, without a chance to be heard, would be a deprivation of property without due process of law; but, if the claimant appears and takes part in the trial in the district court, or otherwise seeks to call into action the powers of the court, by motion, demurrer, or answer, without in some way objecting to the jurisdiction of the court for failure to serve notice of appeal on him, he will be held to have waived such notice, and the court would have jurisdiction and power to render proper judgment therein.

(Syllabus by Robberts, C.)

*Error from District Court, Cherokee County;*
*John H. Pitchford, Judge.*

A claim filed by the Cherokee County Publishing Company was allowed by the Board of Commissioners of Cherokee County, and, a motion to dismiss an appeal by the county to the district court being overruled, the action of the Board being reversed, and the claim being disallowed, the Publishing Company brings error. Affirmed.

*Bruce L. Keenan,* for plaintiff in error.

*George M. Hughes,* for defendant in error.

Opinion by ROBBERTS, C.  This case comes to this court on appeal from the district court of Cherokee county. The action arose upon the filing of a claim by the plaintiff in error with the board of county commissioners

of Cherokee county for publishing the delinquent tax list for that county for the year 1911. The claim was allowed by the board, and upon the petition of seven taxpayers of the county the case was appealed to the district court of that county. Section 1640, Rev. Laws 1910. No appeal bond was filed by the county. A motion to dismiss the appeal was filed, and overruled by the court, and exceptions saved. Several grounds were set out in the motion to dismiss, but we will only consider one, viz., the county attorney failed to file an appeal bond for the county.

There is no statement in the body of the case-made itself that it contains all the evidence introduced at the trial, and for that reason this court cannot consider any question that would require an investigation of the evidence, and therefore nothing remains for us to consider as a part of the record brought up except: (1) The motion to dismiss the appeal from action of the board of county commissioners to the district court for failure on the part of the county to give an appeal bond; (2) the findings of the trial court and judgment record thereon; (3) the agreements of counsel upon the facts as shown in their respective briefs.

The motion to dismiss the appeal from the board of county commissioners to the district court for failure of the county to give an appeal bond is not well taken, and the court did not err in overruling that motion. The section on which counsel bases his motion is as follows:

"From all decisions of the board of commissioners upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty, and one or more sureties to be approved by the county clerk, conditioned that the ap-

pellant will prosecute his or her appeal without delay, and pay all costs that he or she may be adjudged to pay in the said district court; said bond shall be executed to the county, and may be sued in the name of the county upon breach of any condition therein:    Provided, that the county attorney, upon the written demand of at least seven taxpayers of the county, shall take an appeal from any action of the board of county commissioners when said action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do; and in such case no bond shall be required or given and upon serving the notice provided for in the next section the county clerk shall proceed the same as if a bond had been filed." (Section 1640, Rev. Laws 1910.)

Counsel contend that this appeal does not relate to the interests or affairs of the whole county at large or any portion thereof, and for that reason does not come within the latter part of the section, which provides that no bond shall be given, but, being only a personal matter, an appeal bond is required. While we do not agree with counsel that the case should be determined under the latter part of the section, we are also of the opinion that no bond would be required in the remedy provided in the former part of the section, and will consider the case on the theory that the petition of the seven taxpayers is simply surplusage, and the appeal taken solely on the motion of the county attorney.

Under the usual rule that statutes are to be construed according to the plain import of the language, the construction claimed by counsel might be upheld, but we must not forget that there is a higher and more potent rule that:

"The primary object shall be the intention of the lawmakers, and, when any rule of construction defeats

that intention, it must be abandoned. Rules of construction are but aids to the accomplishment of this primary object." (*Maben v. Rosser,* 24 Okla. 588, 103 Pac. 674.)

"Where the meaning intended by the use of a certain word or phrases of certain words in a statute is uncertain, the intention will be ascertained by consideration of the entire statute and other statutes concerning the subject-matter and the history and surrounding conditions at the time of its enactment." (*Beaty v. State ex rel. Lee,* 35 Okla. 682, 130 Pac. 958, citing *Rakowski v. Wagoner,* 24 Okla. 282, 103 Pac. 632; *Trapp v. Wells Fargo Exp. Co.,* 22 Okla. 377, 97 Pac. 1003; *Winslow v. France,* 20 Okla. 303, 94 Pac. 689; *Territory of Oklahoma ex rel. Sampson v. Clark,* 2 Okla. 82, 35 Pac. 882.)

It will be noticed the section provides that bond shall be filed with one or more sureties, that it shall be executed to the county, and may be sued on in the name of the county. It will hardly be contended that it was intended that the county should be required to give security in such insignificant matters as appeal bonds or cost bonds, or that the county would be required to do the ridiculous act of executing a bond to itself, or, what would be more ridiculous, bring a suit "in the name of itself, against itself," all of which is provided for in the statute, under the construction contended for by counsel for plaintiff in error. Such never was the intention of the Legislature, and therefore it is not necessary for a county to enter into an appeal bond in order to appeal a case from the action of a board of county commissioners.

The next question to be considered is as to the findings of the trial court on the questions of fact. The evidence taken at the trial not having been brought up, all parties are bound in this court by the findings of the lower court.

. Without intending any criticism upon the court, we will here state that the findings of fact are so intermingled with conclusions of both law and facts that it is with considerable difficulty that we are able to obtain an entirely satisfactory understanding of just what the findings of the court are, but, by taking the entire record, with the aid of the arguments of counsel and their admissions as shown in their respective briefs, we determine that the findings of fact are as follows:

(1)  On the 15th day of April, 1911, the board of county commissioners designated the Tahlequah Sun as the paper in which the delinquent tax list for the year 1911 should be printed, and entered into a contract with said paper in which it agreed to print said tax list at the rate of one cent a line.

(2)  Before the 1st day of October of that year the managers of the Sun gave notice to the county commissioners that they would not comply with their "one cent a line" contract, and refused to do so, and the board attempted to enter into another contract with the same or other papers at five cents a line, but failed to close said contract until the 3rd day of October, 1911.  In the meantime, viz., on the 2d day of October, the county treasurer of Cherokee county made a contract with the Arrow Publishing Company to publish said tax list at four cents a line, and under said contract delivered the list to the Arrow Publishing Company for publication, and that paper published the same as required by law.  The county treasurer did not deliver the tax list to the Sun, but it obtained it from some other source, presumably by copying the publication in the Arrow, and published it on the days and for the time required by law.  After the publications both papers filed claims with the county commis-

Cherokee County Publishing Company v. Cherokee County.

sioners. The claim of the Sun, which was for four cents a line in pursuance of the contract of October 3, 1911, was allowed for the sum of $1,182.12, and that of the Arrow, under the contract with the county treasurer of October 2, 1911, for the sum of $1,226.40 was disallowed.

The foregoing state of facts is admitted, in substance, in the briefs of both parties. There are conclusions of both law and fact stated in the judgment roll which we will now consider together.

The court concludes, as a matter of law, that the attempt of the county commissioners to rescind the one cent a line contract with the Sun is absolutely void. So far as the case is concerned, that is immaterial. The controlling question herein is: Did the Sun publish the delinquent tax list under a valid contract? One thing is certain; it refused to publish the list under the one cent a line contract of April 15, 1911, and, according to the findings of the court and the agreement of all parties, that is the only contract the Sun had with the county up to October 3, 1911.

Under the statute (section 7397), as we construe it, the county commissioners had exclusive authority to designate the newspaper in which the list should be published up to October 1st. The language is:

"The treasurer shall give notice of the sale of real property for delinquent taxes by publication thereof once a week for three consecutive weeks, commencing after the first day of October, preceding the sale, in some newspaper in the county, to be designated by the board of county commissioners, and if the board of county commissioners shall fail to designate such paper, then in a paper to be selected by the treasurer."

The meaning is:

"The treasurer shall give notice   *   *   *   commencing after the first day of October, in some newspaper in the county, to be designated by the board of county commissioners, and if the board of county commissioners shall fail to designate such a paper, then in" some newspaper "to be selected by the treasurer."

The treasurer is to give the notice after the 1st day of October. To do so, he must furnish the list. The county commissioners shall designate the paper, but, if they fail or neglect to do so, impliedly and necessarily by the 1st day of October, then it becomes not only the privilege, but the duty, of the county treasurer to select the paper. As stated before, the question of whether the original contract with the Sun was void is immaterial. It is sufficient that the board of county commissioners and the Sun, at least so far as the publication of the tax list was concerned, had abandoned the original contract prior to the 1st day of October and up to the 3d day of October, at which time they attempted to enter into a new and different contract, which effectually settles the status of all parties concerned as to the original contract, so far as it relates to the publication of the tax list for the year 1911. This question, or a very similar one, was before this court in *Allen & Rixse v. County Commissioners*, 12 Okla. 603, 73 Pac. 286. It appears from that case that prior to 1895 (Stat. 1893, sec. 9, art. 10, c. 70, entitled "Revenue") the law required the county treasurer to publish the tax list "in the official newspaper of the county," which was to be selected by the county commissioners, but the act of that year (section 5, art. 3, c. 43, Session Laws 1895) changed the law in that respect, and provided, "The treasurer shall give notice   *   *   *   in some newspaper

of the county," and that is the language of the law today. The county commissioners shall designate "some newspaper of the county," and, if the board of county commissioners fail to do so up to October 1st, "the county treasurer shall designate some newspaper of the county." So it will be seen that, when it became the duty of the county treasurer to select the paper, he was not bound to select the official paper of the county, even if there was one; his only limitation is "some newspaper in the county," of course, having the necessary legal requirements as to time, for publishing legal notices. The language of the court in the case cited, and pertinent to the question here involved, is as follows:

"This section makes it the duty of the county treasurer to publish this list, and the natural inference would be that the party upon whom the law cast the duty should be the proper person to select the medium through which this publication was to be made, and, it being the duty of the treasurer to cause this publication to be made, it would seem to be his right to select the newspaper, unless a contrary intention of the Legislature was manifest in the statute. This duty of publishing the delinquent tax list is only imposed by statute, and, if the statute does not in express terms or by reasonable implication indicate a different intention, then the person whose duty it was to have the same published would be considered the proper person to select the agency by which this notice was given, and the legislative will carried out. * * * If the question [were] as to who should have the right to select an official newspaper for the county, it might reasonably be contended that, as the county commissioners had control and management generally of the fiscal affairs of the county, they would be the proper authority to determine this question, and if they had made a choice of a newspaper which should do the county printing, and to be generally recognized as the official newspaper of the county, then, as the law stood prior to the amendment of 1895, it might

be reasonable to suppose that it would be the duty of the county treasurer to recognize such paper as the official paper of the county, and, in obedience to the statute, publish the delinquent tax list in that paper, and he would have no choice in the matter, but it seems to us equally reasonable to suppose that, when the Legislature, in its wisdom, saw fit to take from the act the words 'official newspaper,' and substitute therefor the words 'some newspaper,' it was for some definite and distinct purpose, and that therefore they made manifest their intention to in some manner change the law as to the newspaper in which said lists must be published. It would not be reasonable to suppose that the lawmaking power made this change of language without any purpose, or that the same was carelessly * * * done; it would be more reasonable to suppose that, when they made this change in the language of the law, they had the act they were amending before them, and comprehended and understood the change they were making, and made such change for a well-understood purpose." (*Allen & Rixse v. County Com'rs Cleveland County*, 12 Okla. 606, 73 Pac. 287.)

Plaintiff in error insists that the district court was without jurisdiction, because the county attorney failed to serve notice of appeal upon it, as claimant. This contention might, and no doubt would, have been sustained by the trial court, but for the fact that the claimant appeared in that court and consented to its jurisdiction by filing motions and otherwise taking part in the trial of the case, and at no time objected to the jurisdiction of the court for failure to serve notice of appeal. The plaintiff in error's first appearance in the trial court was by motion as follows:

"CHEROKEE COUNTY, *Plaintiff*, v. CHEROKEE PUBLISHING Co., *Defendant*.

"Comes now the defendant in the above-entitled appeal from the board of county commissioners of Chero-

kee county, state of Oklahoma, upon their action and decision in allowing claim No. 284 of the Tahlequah Sun for the sum of $1,182.12 on the 6th day of November, 1911, and moves the court to dismiss said appeal for the reasons, to wit:

"(1) Because said pretended appeal was not taken in time, and because the party aggrieved, Cherokee county, Okla., has not given any appeal bond as required by law before taking such appeal (No. 1690-524).

"(2) Because the appeal sought to be taken is for the reason that 'the subject-matter herein relates to the affairs of Cherokee county at large, and that the said claim allowed by the board of county commissioners is not a proper charge against this county for which this county should be responsible,' and, as the appeal shows the claim is for publishing the delinquent tax list, the subject-matter is clearly one for which the county is liable.

"(3) Because the appeal shows on its face that it is not. a matter relating to the affairs of the county at large, but a money claim against said county, and, if the county is the aggrieved party, the said county can only appeal by its county attorney by giving the required bond (No. 1690-524).

"(4) If the court should be of the mind that the appeal can be taken without bond, it is yet not properly taken, because the county attorney does not state that 'he deems it to the interest of the county so to' appeal.

"BRUCE L. KEENAN,
"Attorney for the Defendant."

The record also shows that defendant appeared and took an active part in the trial.

It will be noticed that the motion to dismiss calls into operation the general powers of the court, and does not question the jurisdiction or raise any question as to notice. The defendant also filed its motion for new trial.

"A defendant who files a motion for a new trial in a case after judgment which is based on nonjurisdictional grounds thereby enters a general appearance." *(Trugeon v. Gallamore,* 28 Okla. 73, 117 Pac. 797; *Wynn v. Frost,* 6 Okla. 89, 94, 50 Pac. 184.)

"Whether an appearance is general or special does not depend upon the form of the pleading, but upon its substance. If a defendant invokes the judgment of the court upon any question, except that of the power of the court to hear and decide the cause, his appearance is general." *(Haynes v. City Nat. Bank,* 30 Okla. 614, 121 Pac. 182.)

"An appearance, in order to be special, must be shown to be such by a proper designation and entitlement." *Drennan v. Warburton,* 33 Okla. 561, 122 Pac. 179.)

"Where a party against whom a judgment is rendered files a motion to vacate the judgment upon the ground that the court has no jurisidiction of the defendant, and said motion is based upon nonjurisdictional as well as jurisdictional grounds, *held,* that thereby said party enters a general appearance as though said appearance had been made at the trial." *(Ziska v. Avey,* 36 Okla. 405, 122 Pac. 722.)

This case is clearly distinguished from *Board of County Commissioners of Beaver County v. Beaver County ex rel. Spohn,* 45 Okla. 526, 146 Pac. 434, in that in this case the defendant made general appearance. The language of Justice Hardy is as follows:

"No notice having been served upon the claimant in this case that an appeal would be prosecuted from the order of the board of county commissioners allowing his claim, and not having been a party to the hearing in the district court, the order disallowing his claim without notice to him or a chance to be heard would be a deprivation of property without due process of law, and the judgment of the court would be void." *(Board of County*

*Com'rs of Beaver County v. Beaver County ex rel. Spohn,* 45 Okla. 526, 146 Pac. 434.)

In the case cited and relied on by plaintiff Justice Hardy makes an exception of cases where the appellee or claimant appeared and was a party to the hearing in the district court, and in such a case it is not so much a question of jurisdiction as that the claimant was deprived of his rights without due process of law. It will be remembered that the statute does not in direct terms require notice to be given to claimants in appeals of this kind, and therefore the case does not come within the rule that, where the statute provides for certain means or ways for appeal, the manner provided must be strictly followed, to the exclusion of all other ways, and also that there is a difference in what are called or known as statutory jurisdictional questions, and the constitutional safeguard that "no person shall be deprived of life, liberty or property without due process of law." One is a condition precedent to and necessary to jurisdiction, while the other is a sacred right preserved to the people. Where a man appears in court and submits himself to the jurisdiction of the court, as a general rule, it cannot be said that he has been deprived of his rights without due process of law, and such was evidently not only the meaning, but the plain language, used in the Beaver County Case, *supra.*

The Nebraska cases, *Miles v. Holt County,* 86 Neb. 238, 125 N. W. 527, 27 L. R. A. (N. S.) 1130, and *State ex rel. Cronin v. Cronin,* 75 Neb. 738, 106 N. W. 986, cited by plaintiff in error, are not in point, for the reason that in those cases, after the county board had designated the newspaper in which the notices were to be published, the county treasurer assumed that the designation was not sufficient in law, and therefore ignored it, and delivered

the tax list to another paper selected by him. Those cases involved simply the question of the legal or sufficient designation of the newspaper by the county board.

In the case at bar the paper designated by the county board declined and refused to publish the list under the designation and contract made by the commissioners; and, furthermore, so far as we have been able to investigate the statutes of Nebraska, there is no limitation upon the time in which the county board may designate the paper, while in this state, according to our construction of the statute, the time is limited to the 1st day of October.

Another controlling fact in this case is that the plaintiff in error not only refused to comply with the contract under its claimed designation by the county board, but, furthermore, the plaintiff in error did not publish the official tax list furnished by the county treasurer; at least, there is no evidence that it published such a list, and the tacit agreement and understanding gathered from the oral arguments of counsel, the briefs filed in the case, as well as the evidence, and record generally, points to the fact that the list published by plaintiff in error was simply copied from some other paper. This is not sufficient to authorize it to recover in this case, and especially is that true since it refused to publish the list under the contract entered into by it with the county board.

From the foregoing it must be apparent that the trial court committed no error in reversing the board of county commissioners, and rejecting and disallowing the claim of the plaintiff in error, and therefore we recommend that this cause be affirmed.

By the Court: It is so ordered.