## Protest of CHICAGO, R. I. & P. RY. CO.

No. 20263. Opinion Filed June 25, 1929.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robt. E. Lee, for protestant.

Frank Watson, Co. Atty., J. E. Layden, City Atty., W. J. Horton, and Jackman A. Gill, for protestee.

SWINDALL, J. We have for consideration here an appeal from' the Court of Tax Review of the state of Oklahoma. In this opinion the Chicago, Rock Island & Pacific Railway Company will be referred to as protestant, and the county excise board of Pittsburg county will be referred to as protestee. The county excise board of Pittsburg county made and certified to the State Auditor, among others, tax levies for the fiscal year 1928-29 as follows: City of Hartshorne, .50 mill for cemetery purposes; city of McAlester, .50 mill for cemetery purposes, 1 mill for library purposes. These levies were included in the general fund of the said cities respectively for said fiscal year. Thereupon the protestant filed in the Court of Tax Review, as provided by law, its protest against the levy for cemetery purposes for the city of Hartshorne and for library and cemetery purposes for the city of McAlester, alleging in said protest that said levies, respectively for said respective cities for said purposes and each of them, were unauthorized by law and void. Pro-

testant alleges that the officers of the city of Hartshorne of said county requested, and said excise board approved a levy of 6.50 mills for general fund purposes for said year, which levy is excessive and void in the amount of .50 mill for the following reasons, to wit:

That said excise board levied 6 mills for current expense and .50 mill for cemetery purposes, making a total levy of 6.50 mills for general fund purposes, which is in excess of the 6 mills legal limit for this purpose, and no election was held to authorize the increase.

Said levy of 6.50 mills is therefore excessive and void to the extent of .50 mill and to that extent should be set aside and said levy corrected accordingly.

Next protestant alleges that the officers of the city of McAlester, of said county, requested and said excise board approved a levy of 7.50 mills for general fund purposes, for said fiscal year, which levy is excessive and void in the amount of 1.50 mills for the following reasons, to wit:

That said excise board levied 6 mills for current expense, .50 mill for cemetery purposes, and 1 mill for library purposes, making a total levy of 7.50 mills, and said levy is 1.50 mills in excess of the 6 mills legal limit for general fund purposes, and no election was held to authorize the increase. Said levy of 7.50 mills is therefore excessive and void to the extent of 1.50 mills and to that extent should be set aside and said levy corrected accordingly.

These items of the protest were heard by the Court of Tax Review, and judgment rendered by said court denying said items of protest, and it is from said judgment of the Court of Tax Review as to these two items that said protestant appeals and brings the case here for review.

The two assignments of error upon which this appeal is predicated are as follows:

"1. The court erred in rendering judgment against the protestant and in favor of the protestee as to item X of the protestant's protest, involving the cemetery fund of the city of Hartshorne; that the judgment of the Court of Tax Review on said item of the protest is contrary to law for the reason that the levy involved in said item of the protest is not authorized by law and any and all statutes purporting to authorize such levy are unconstitutional and void.

"2. The court erred in rendering judgment against protestant and in favor of the protestee in connection with item XI of the protest, involving the general fund of the city of McAlester, for the reason that the

levy referred to in item XI of the protest is contrary to law, unconstitutional and void."

It is admitted that the levy for general fund purposes for the city of Hartshorne for said fiscal year was 6.50 mills, and that the legal limit for current expense items is 6 mills. It is also admitted that the levy of .50 mill for cemetery purposes was in addition to the 6 mills limit for current expense. It is the contention of protestant that the item of .50 mill for cemetery purposes is simply an ordinary item of current expense and of necessity must come within the 6 mills limit authorized by law for current expenses. The protestee contends, and the Court of Tax Review so held, that the levy of .50 mill for cemetery purposes in addition to the other items of current expenses was authorized by chapter 8 of the 1927 Session Laws of Oklahoma, being Senate Bill No. 23 of the Eleventh Legislature. That act of the Legislature originated in the Senate and appears at page 8 of the 1927 Session Laws of Oklahoma. It reads as follows:

"Senate Bill No. 23.

"Cemetery Fund.

"An Act authorizing cities and towns to establish a fund to be known as a cemetery fund, to be used for the purpose of upkeep, care and beautifying therefor, repealing all conflicting laws, and declaring an emergency.

"Be It Enacted by the People of the State of Oklahoma:

"Cities and Towns—Cemetery Funds.

"Section 1. That section 1, chapter 153, Session Laws of Oklahoma, 1915, page 246, section 4329, Compiled Oklahoma Statutes 1921, be and the same is hereby amended to read as follows:

"'Section 1. All cities or towns owning and controlling any lands, lots, or parcels of grounds, used for cemetery purposes, are hereby authorized to construct, improve, beautify and maintain same by an ad valorem tax levy for the use and benefit of the inhabitants of said cities or towns controlling same; and the county excise board in each county in this state is hereby authorized at the option of the governing body of said city to make an additional levy of not to exceed one-half (½) mill for cemetery purposes upon all property, both real and personal, within the corporate limits of such cities, towns, and villages, subject to taxation upon an ad valorem basis in an amount which, together with all levies heretofore authorized for municipal purposes shall not exceed a total of ten (10) mills which is hereby declared not to be a current expense

and to be for a special purpose known as the cemetery fund, and in addition to the maximum levy for current expenses now provided by law; said additional levy when made and collected shall be credited to the cemetery fund of said municipalities and shall be used for the purpose of beautifying, caring for, and the upkeep of all such land and premises so held and owned by such cities, towns and villages for cemetery purposes.' "

Protestant contends that the above act of the Legislature is unconstitutional and void in that said act is a bill for raising revenue and is violative of section 33, article 5, of the Constitution of Oklahoma, which declares that:

"All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills. No revenue bill shall be passed during the five last days of the session."

Protestee answers this contention and maintains that this act is not unconstitutional, in that it is not a bill for raising revenue, but an act which authorizes municipalities to levy taxes for municipal purposes. We think the protestee is correct.

In Dickey, County Treasurer, v. State ex rel. City of Tulsa, 90 Okla. 106, 217 Pac. 145, this court had under consideration chapter 48, Session Laws 1919, amending the former statute and providing for street improvements and for the levying and collection of taxes therefor. It was contended, as in the instant case, that the act was in violation of section 33, of article 5, of the Constitution, and in holding against such contention this court said:

"In our opinion, the constitutional provision referred to has reference to bills for raising revenue to meet the expense of the state government, and has no reference to bills which authorize a municipal subdivision of the state to raise revenue for defraying the expense of such municipality. While the bill authorizes the municipal subdivision of the state to levy tax for a particular purpose, yet it does not raise revenue, and the revenue is not raised until the municipality exercises authority granted by the bill. hence the constitutional provision referred to has no application. Our view in this matter is clearly expressed in the case of Harper v. Commissioners of the Town of Elberton, 23 Ga. 566, as follows:

" 'Besides, the delegation of the power to tax, and the laying of a tax, are two things. This act does the first; the last, it does not do. The constitutional provision applies to an act which does the last, and does not apply to an act which does the first'."

This same rule has been followed in Ex parte Sales, 108 Okla. 29, 233 Pac. 186, and in Missouri, K. & T. Ry. Co. v. Washington County, 136 Okla. 191, 276 Pac. 769.

We therefore hold that the Court of Tax Review was correct in denying the protest as to this item, and its judgment in that respect should be affirmed.

This disposes of the protest in so far as it relates to the cemetery tax of the city of Hartshorne and the city of McAlester, and brings us to the consideration of the assignment of error that the levy of 1 mill for the library fund for the city of McAlester is over and above the 6 mill limit for current expense and unauthorized by law and is void.

Protestee admitted that a full levy of 6 mills was made for other items of current expense, but says the 1 mill levy for library purposes is authorized by chapter 7 of the Session Laws of 1927, amending section 9528, C. O. S. 1921, and being as follows:

"That the city council of any city of the first class in this state shall have power to establish and maintain a public library and reading room, or either of them, for the use and benefit of the inhabitants of such city, and the county excise board of each county in this state is hereby authorized, at the option of the governing body of said city, to make an additional levy of not to exceed one mill for library purposes upon all property in said city of the first class subject to taxation upon an ad valorem basis in an amount which together with the aforesaid levies heretofore authorized shall not exceed a total of 10 mills, which is hereby declared not to be a current expense and to be for a special purpose known as the library fund and in addition to the maximum levy for current expenses now provided by law; said additional levy when made and collected shall be credited to the library fund of said municipality and shall be used for the purpose of establishing and maintaining a public library and reading room, or either of them, for the use and benefit of the inhabitants of such city; provided, that the said fund shall not be transferred to any other fund or used for any other purpose; and, provided, further, that in such cities that have not less than one thousand colored inhabitants the said city council may establish and maintain a separate library and reading room, or either of them, for the use and benefit of the colored inhabitants thereof, to be maintained by said city council in like manner as that of the library and reading room. Provided, this bill shall not apply to any city except those which now have an established library."

Protestant contends that this act of the Legislature is unconstitutional and void for the reason that the same is violative of sec-

tion 33, article 5, of the Constitution of Oklahoma, supra, and also that said act is contrary to section 59, article 5 of the Constitution, which declares that:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

For the reasons heretofore stated, we hold that said act does not violate section 33 of article 5 of the Constitution. As to its being violative of section 59, article 5, presents a more serious question.

We are required to give the title and the act any reasonable construction that would carry out the express purpose of the Legislature, and we think, as has been said of another statute, the one under consideration is not unconstitutional or void, or at least it is not so clearly unconstitutional and void that we can declare it to be so. In Armstrong, Secretary of State, v. Simonson (Colo.) 271 Pac. 627, the Supreme Court of Colorado says:

"In construing statutes, words thereof are not always to be given their literal meaning, but in order to ascertain legislative intent, which when ascertained must control, words should be considered with reference to the purpose sought to be accomplished by statute."

And in Pond v. Maddox, 38 Cal. 572, that court held:

"The general ru'e is, that a proviso which is clearly repugnant to the body of an act, is void. But, in construing statutes, it is the duty of the court to reconcile, if practicable, apparently conflicting provisions, so as to carry into effect the intention of the Legislature as it appears from the whole act, and from contemporaneous legislation.

"If it clearly appears from all the sources of interpretation, that a provision of a statute was inserted through inadvertence, it will be disregarded."

In Town of Grove v. Haskell, 31 Okla. 77, 116 Pac. 805, this court held:

"When the literal enforcement of a statute would result in great inconvenience or lead to consequences which are absurd and which the Legislature cannot be held to have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which shall promote the ends of justice, and avoid the absurdity."

In Board of Education v. Woodworth, 89 Okla. 192, 214 Pac. 1077, and Chicago, R. I. & P. Ry. Co. v. State, 90 Okla 173, 217 Pac 147, this court held that:

"Every statute should have a reasonable, sensible construction in preference to one which renders it, or a substantial part of it, useless or deleterious."

In Oklahoma Natural Gas Co. v. Corporation Commission, 90 Okla. 84, 216 Pac. 917, and Oklahoma Coal Co. v. Atkinson, 121 Okla. 59, 247 Pac. 366:

"It is a cardinal rule that in the construction of statutes the legislative intent must govern, and to arrive at the legislative intent the entire act must be considered, together with all other enactments upon the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect which the Legislature intended."

In Tinker v. Modern Brotherhood of America, 13 F. (2d) 130, the court said:

"A statute should be construed with reference to the object to be accomplished" by it.

And in Brown v. Miller, 89 Ok'a. 287, 215 Pac. 748:

"The rule is established, a thing within the intention is regarded as within the statute, though not within the letter; and a thing within the letter is not within the statute, unless within the intention."

And in Cherokee County Pub. Co. v. Cherokee County, 48 Okla. 722, 151 Pac. 187, this court said:

"Under the usual rule, statutes are to be construed according to the plain import of the language, the construction claimed by counsel might be upheld, but we must not forget that there is a higher and more potent rule that: 'The primary object shall be the intention of the lawmakers, and, when any rule of construction defeats that intention, it must be abandoned. Rules of construction are but aids to the accomplishment of this primary object.' Maben v. Rosser, 24 Okla. 588, 103 Pac. 674."

In Beatty v. State, 35 Okla. 677, 130 Pac. 956, this court said:

"Where the meaning intended by the use of a certain word or phrases of certain words in a statute is uncertain, the intention will be ascertained by consideration of the entire statute and other statutes concerning the subject-matter and the history and surrounding conditions at the time of its enactment."

In the case of Hudson v. Hopkins, 75 Okla. 260, 183 Pac. 507, this court in discussing the office of the proviso held that:

"The natural and appropriate office of a proviso being to restrain or qualify some preceding matter, it should be confined to

what precedes it, unless it clearly appears to have been intended to apply to some other matter."

"A proviso to a section of the statute should be construed with the section of which it forms a part, and, if the context requires it, may be considered tantamount to an independent enactment."

In the cases of Gist v. Rackliffe, Gibson Construction Co. (Mo.) 123 S. W. 921, and Gerstung v. Sauer (N. J. L.) 80 Atl. 993, it is held that:

"If a proviso in a statute be directly contrary to the purview of the statute, the proviso is valid and not the purview."

And in Orinoco Supply Co. v. Masonic & Eastern Star Home (N. C.) 79 S. E. 964, it is held that:

"Where the proviso in a statute is directly contrary to the purview of the statute, the proviso is good and not the purview, because the proviso speaks the later intention of the Legislature."

In the case of Board of Com'rs of Creek County v. Alexander, State Treasurer, 58 Okla. 128, 159 Pac. 311, we have held:

"Subsequent legislative enactments may be considered as an aid in the interpretation of prior legislation upon the same subject."

So, bearing in mind the rule announced in Pond v. Maddox, supra, that:

"The general rule is that a proviso which is clearly repugnant to the body of an act, is void. But in construing statutes, it is the duty of the court to reconcile, if practicable, apparently conflicting provisions, so as to carry into effect the intention of the Legislature as it appears from the whole act, and from contemporaneous legislation"

—and in Orinoco Supply Co. v. Eastern Star Home, supra:

"Where the proviso in a statute is directly contrary to the purview of the statute the proviso is good and not the purview, because the proviso speaks the later intention of the Legislature"

—and then follows the cardinal rule in the construction of Constitutions and statutes, that the intention of the lawmakers, when ascertained, must govern, and that to ascertain the intent all the various portions of the legislative enactments upon the particular subject, including subsequent enactments, should be construed together and given effect as a whole, and when it is apparent that a strict interpretation of a particular statute, construed alone, would defeat the intention of the Legislature, as shown by other legislative enactments which relate to the same subject, and which have been enacted in pursuance of and according to a general purpose in accomplishing particular results, the suppression of a particular evil, such construction should not be adopted. DeHasque v. A., T. & S. F. Ry. Co., 68 Okla. 183, 173 Pac. 73. And, governed by the rule so often announced by this court and other courts, that we are required to give to an act any reasonable construction that will carry out the express purpose of the Legislature and hold that it is not unconstitutional or void, or at least it is not so clearly unconstitutional and void that we can declare it to be so, and reconcile, if practicable, apparently conflicting provisions, and to adopt a construction which shall promote the ends of justice and avoid the absurdity, then is the contention of protestant that the proviso, "that this bill shall not apply to any city except those which now have an established library," violates section 59 of article 5 of the Constitution, which provides that laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted. If we should arrive at the conclusion that the same was a special law, there is nothing in the record to show that the same was not passed in conformity with section 32 of article 5 of the Constitution, requiring the publication and filing of notice of a special act. The presumption, therefore, is that the law was constitutionally enacted. Coyle v. Smith, 28 Okla. 121, 113 Pac. 944; A., T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 Pac. 921; McNeal v. Ritterbusch, 29 Okla. 223, 116 Pac. 778, and Chicago, R. I. & P. Ry. Co. v. Beatty, 34 Okla. 321, 118 Pac. 367.

However, the most salient question is, Would such a construction of this proviso give the act the interpretation the lawmakers had in mind at the time this act was passed and promote the ends of justice and avoid the absurdity?

The original library act was first passed by the Legislature and approved by the Governor of Oklahoma Territory on March 8, 1901, and amended by the Act of March 16, 1903, by increasing the levy for library purposes to two mills. Session Laws of Oklahoma, 1903, chapter 27. That act was again amended on March 16, 1911, by broadening the former act so as to include a library for colored inhabitants, and the last-named act was followed by the Act of March 29, 1919, being section 9528, C. O. S. 1921, in which an attempt was made to authorize an

increase of the library tax so as to make the tax in addition to the tax levy authorized for current expenses of cities.

This court, however, in the case of Missouri, K. & T. Ry. Co. v. Bennett, County Treasurer, 122 Okla. 102, 250 Pac. 1021, held that the 1919 amendment was not specific enough in its language to accomplish that purpose, since it did not in terms provide that it was not to be a current expense.

In Simmons v. Stuckey, County Treasurer, 113 Okla. 200, 241 Pac. 124, this court held that:

"Where the Legislature has authorized additional apportionment of tax levies for counties and other municipalities of the state, and such apportionment, together with the levies previously authorized, do not exceed the constitutional limitation, such additional levies so authorized are constitutional and valid."

And in the case of Murray v. Ryan, County Treasurer, 125 Okla. 17, 257 Pac. 285, this court in passing upon the validity of a levy for the fiscal year 1925, held that:

"A levy for library purposes is within the maximum limitation allowed for current expenses of the city."

The case of Missouri, K. & T. Ry. Co. v. Bennett, County Treasurer, supra, was decided by this court October 12, 1926, and petition for rehearing denied December 14, 1926, hence, it is evident the act under consideration was enacted by the Legislature in 1927 to overcome the objections leveled at the law and sustained by the court, so as to make it definite and certain that the levy for a library fund was in addition to the general current expense levy.

So it appears from a general consideration of the history of the legislation upon this subject that it has been the general trend of the legislation upon this subject, since 1901 down to and including the Act of April 8, 1927, being the act under consideration, to broaden the authority of cities of the first class to establish and maintain public libraries and reading rooms and to authorize the county excise board of the respective counties to make an additional levy in excess of the 6 mills for current expenses for the city and still keep the same within the limitation fixed by the Constitution, and we think this is what the Legislature had in view and intended when they passed Senate Bill No 22, which appears as chapter 7 of the Session Laws of 1927. And holding to any other view, in our opinion, would not promote the ends of justice and would lead to an absurdity, because we all realize that we are living in a progressive age, and that when the library law was first enacted in 1901, the territory of Oklahoma possessed very little wealth compared to what it possesses at the present time, and the entire educational system of the state was being conducted upon a very limited basis, as the territory at that time was settled largely with pioneers, a large number of whom lived in dugouts and possessed very limited means, who had never dreamed of, much less accumulated, fortunes; common school buildings were erected by donated labor and private subscriptions; the vast mineral resources of the present time were practically unknown, and very little development had been accomplished in the way of manufacturing; the roads were in poor condition and in every way the necessity for a public library and reading room was not so urgent and pressing as at the present time. Since that date, Oklahoma and Indian Territory have been combined, the state of Oklahoma has been erected and the Legislature has at every session made provision for broadening the common, consolidated, union graded, and independent school systems of the state, and encouraged night schools, as well as increased the appropriations for maintenance of the university system, and in a general way to advance and promote education, as well as provided for a great road system, and since the invention of the automobile and its present successful operation, in lieu of the horse drawn vehicles, the school boys and girls from the rural districts drive to the cities within a few minutes, enjoy the benefits of the libraries and reading rooms and return to their homes during the early hours of the evening. In addition to this, owing to the development in oil and other industries, and owing to the numerous and various changes which usually and customarily occur in a new state, cities of 1927 are villages in 1929, and in territory that was very sparsely settled in 1927, when the present library law was enacted, oil has been discovered and cities have sprung up as if by magic. The progress of Oklahoma and these wonderful changes in conditions were thoroughly understood by the Legislature in 1927; they knew that railroads would build into a locality that had not prior to that time been served with railroad facilities and a city would spring up; they knew that a new oil field would develop every few months and a prosperous city of the first class would come into existence, that, in order that it might take its place along with other cities of the state and secure the benefits of education, would desire to establish and

maintain libraries, while in other localities, where an oil field had been abandoned, or where crop conditions had not been the most favorable and where a boom town had settled to a village of 400 or 500 people, which is not uncommon in this state, could we say that they intended by the proviso that this bill should not apply to any city except those which now have an established library, and be fair in our holding as to the intention of the Legislature and just to the people for whose benefit this law was enacted? We do not think so. "Now," as used in a statute, ordinarily refers to the date of its taking effect, but the word is sometimes used, not with reference to the moment of speaking, but to a time contemporaneous with something done, and may mean at the time spoken of or referred to as well as at the time of speaking.

In order that the act may stand in its entirety and receive a construction that is fair and reasonable to the legislative intent and be just to the people for whose benefit it was enacted, and result in no absurdity, we hold that the same is a general law and that the word "now," as used in the proviso, is not used with reference to the moment of speaking, but relates to a time contemporaneous with something done. State ex rel. Brewster, Atty. Gen., v. Mayor and Commissioners of the City of Lawrence (Kan.) 165 Pac. 826; 21 A. & E. Enc. of Law, 676; 29 Cyc. 1140.

That is to say, it appears to us that it was the intention of the Legislature that the act was to apply, or might be taken advantage of by any city council of any city of the first class in this state and granting them power to establish and maintain a public library and reading room, or either or both of them, for the use and benefit of the inhabitants of such city, and that the county excise board of any county in this state is authorized at the option of the governing body of said city to make an additional levy of not to exceed one mill for library purposes upon all property in said city of the first class subject to taxation upon an ad valorem basis, and which shall be in addition to the tax for current expenses of the city and within the limit fixed by the Constitution, and that the word "now," as used in the proviso. means that when the governing body of a city of the first class requests, and the county excise board comes to make the levy for library purposes, the city at that time must be a city of the first class as required by the laws of the state of Oklahoma relating to

cities of the first class, and must at that time have an established library or reading room or both, then the county excise board shall have the right and is authorized by said act to make the additional levy of one mill, when requested by the governing body of said city, so long as such levy does not violate the constitutional provision limiting the amount of the levy for city purposes. Authority to make such levy and the levy is governed by the status of the city at the time the excise board comes to make the levy, and the word "now," in said proviso, applies to the city at the time the excise board is called to make the levy, and if the city at that time is a city of the first class, as provided by law, and has an established library, then the excise board is authorized to make such levy, otherwise they cannot do so.

So, we hold that the act applies to all cities of the first class having an established library at the time the excise board is called upon to make such levy, and if in the judgment of the excise board such levy should be made for the welfare of the city, then they are authorized to make the same as herein indicated. Having arrived at this conclusion, we hold that the decision upon that item of the protest was correct and should be affirmed.

For the reasons herein stated, the judgment of the Court of Tax Review is in all things affirmed.

MASON, C. J., LESTER, V. C. J., and RILEY, CLARK, HEFNER, CULLISON, and ANDREWS, JJ., concur.

HUNT, J., absent.

Note.—"Statutes," 36 Cyc. p. 946 n. 57; p. 1003, n. 30; p. 1106, n. 29; p. 1109, n. 47; p. 1124, n. 4; p. 1127, n. 52; p. 1128, n. 54; p. 1147, n. 28.